

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2004

# Doyle v. Commissioner IRS

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2907

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Doyle v. Commissioner IRS" (2004). *2004 Decisions.* Paper 803.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/803

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-2907
_____

NANCY B. DOYLE,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,
_____

ON APPEAL FROM THE DECISION OF THE
UNITED STATES TAX COURT

(Tax Court No. 01-9137)
Tax Court Judge:  Honorable Robert P. Ruwe
_____

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2004

BEFORE: SLOVITER, NYGAARD, Circuit Judges.
and SHADUR,[*] District Judge.

(Filed:  April 20, 2004)

OPINION OF THE COURT

SHADUR, District Judge.

　　Nancy Doyle ("Nancy") has appealed a ruling by the United States Tax

_____

[*]　　Honorable Milton I. Shadur, Senior District Judge for the United States District
Court for the Northern District of Illinois, sitting by designation.

Court that the Commissioner of Internal Revenue ("Commissioner") (1) was correct to deny Nancy relief under 26 U.S.C. §6015(b)(1), part of the Internal Revenue Code ("Code"),[1] from her joint and several tax liability with her husband Richard and (2) did not abuse his discretion when he denied her relief under Section 6015(f). Because the Tax Court did not commit clear error in making either determination, we affirm its decision in both respects.

Nancy and the Commissioner stipulated to a set of facts (App. 21-37) before the Tax Court. We discuss those facts here only as they are necessary to understand our ruling.

Nancy and Richard filed joint federal income tax returns for the years 1980 through 1983 that included large deductions for horse breeding and horse racing tax-sheltered investments (Stip. ¶6). After auditing those returns, the Commissioner issued notices of deficiency alerting Nancy and Richard that they owed upwards of $100,000 in additional taxes (Stip.¶¶7-8). That liability was upheld by two Tax Court determinations that computed the aggregate deficiency (including interest) at well over $300,000 (Stip. ¶¶10-12).

Although the Commissioner has recouped some of the amount due by levying on Richard's wages and by retaining overpayments and refunds due to Nancy and

---

[1] All further citations to the Code will take the form "Section--," eliminating the need for repeated references to "26 U.S.C."

Richard, neither Nancy nor Richard has ever made a voluntary payment on their liability (Stip. ¶¶50-53). Nancy submitted a "Request for Innocent Spouse Relief" pursuant to Section 6015 in October 2000 (Stip. ¶61), but the Tax Court denied Nancy's request and upheld the Commissioner's right to continue collection activity (App. 18). On Nancy's appeal, we now review that decision.

We have plenary review over the Tax Court's legal conclusions, and we review any factual findings not based on the parties' stipulation for clear error (Neonatology Assocs., P.A. v. Comm'r, 299 F.3d 221, 227 (3d Cir. 2002)). Because the Tax Court's ultimate determination that Nancy is not entitled to relief under Section 6015 is a finding of fact, it too is reviewed for clear error (Cheshire v. Comm'r, 282 F.3d 326, 332 (5th Cir. 2002)). Moreover, Section 6015 comports with the general rule that taxpayers bear the burden of demonstrating that a determination by the Commissioner is incorrect (Neonatology Assocs., 299 F.3d at 228; Purificato v. Comm'r, 9 F.3d 290, 292 (3d Cir. 1993)).[2]

To begin with, the Tax Court did not commit clear error when it determined that Nancy had not met her burden of establishing each of the five conjunctive requirements (A) through (E) of Section 6015(b)(1). Only if a taxpayer can prove all five

_____

[2] Section 6015 has replaced the former Section 6013(e), generally liberalizing when relief would be available for "innocent spouses." But where parts of the new provision are comparable to the old one, caselaw pertaining to Section 6013(e) is helpful in construing Section 6015 (Cheshire, 282 F.3d at 331 n.9 & 332 n.15). This opinion follows that interpretive guideline when applicable and appropriate.

3

requirements will she "be relieved of liability." Here the Tax Court found that Nancy failed to show (1) that "she did not know, and had no reason to know, that there was such understatement" (requirement (C)) and (2) that "taking into account all the facts and circumstances, it is inequitable to hold the other individual [here Nancy] liable for the deficiency..." (requirement (D)).

As to the first of those failures, courts are divided about the proper standard to use in erroneous-deduction scenarios to determine whether a taxpayer knew or had reason to know of an understatement (see Cheshire, 282 F.3d at 333 n.18; Jonson v. Comm'r, 118 T.C. 106 (2002)).[3] As for the Tax Court, it consistently applies a knowledge-of-the-transaction test to both income-omission and erroneous-deduction situations (see, e.g., Jonson, citing among other cases Bokum v. Comm'r, 94 T.C. 126, 150-51 (1990), aff'd on another ground, 992 F.2d 1132 (11th Cir. 1993)). Under that approach a taxpayer does not satisfy Section 6015(b)(1)(C) if she has reason to know about the underlying transaction that resulted in the understatement at issue (id.). In contrast, many circuits hold that in the erroneous-deduction context mere awareness of the underlying transaction that gave rise to an erroneous deduction does not alone cause the taxpayer to flunk Section 6015(b)(1)(C)(that view was first expounded in Price v. Comm'r, 887 F.2d 959, 964-65 (9th Cir. 1989)). Those circuits ask whether a reasonably

---

[3]     Although publication page references to Jonson are not yet available, the opinion may be retrieved on Westlaw.

4

prudent taxpayer could be expected to know that there was an erroneous deduction at the time she signed the return (id.). Any "yes" answer to that question triggers a duty of inquiry, and a taxpayer who then does not inquire further is denied relief under Section 6015(b)(1)(C)(id.). As the ensuing discussion reflects, we need not stake out a position in that debate.

As for the first of those approaches, the Tax Court found that Nancy knew of the underlying horse breeding and horse racing investments because she wrote the checks for the transactions pertaining to them (App. 13, 44-45).[4] And as indicated early, that alone is enough to defeat Nancy under the Tax Court's approach to "knew or had reason to know."

As for the second and more lenient test first articulated in Price, we hold that Nancy did not adequately discharge the duty to inquire further into the possibility of an erroneous or improper deduction. Though the discussion of that concept is necessarily more prolonged, our conclusion adverse to Nancy is equally firm.

Various factors consistently play into the threshold determination as to whether a duty of inquiry arises as envisioned by Price and other cases following the same line (see, e.g., Bliss v. Comm'r, 59 F.3d 374, 378 (2d Cir. 1995)). Those factors

---

[4] Nancy testified that she did not know about any investments Richard may have had during the period in question (App. 40-41, 43-45). But it was the Tax Court's responsibility and prerogative to assess and weigh conflicting evidence and to make the factual finding as to whether Nancy knew of the transactions (App. 13; Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168 (1942)).

5

include such matters as the taxpayer's level of education and involvement in the family's financial affairs, the size and nature of the deduction (particularly in relation to the couple's tax liability and gross income), the presence of comparatively large expenditures or an abrupt lifestyle change, and deception or evasion by the spouse with primary responsibility for the couple's finances (26 C.F.R. §1.6015-2(C); see also Hayman v. Comm'r, 992 F.2d 1256, 1261-62 (2d Cir. 1993)).

Several of those ingredients confirm Nancy's clear duty to inquire about the deductions. For one thing, although she had only a high school education, her writing of all the household checks and handling of household expenses involved her in an active role in the family's finances (App. 38, 44-45). More significantly, Nancy certainly should have been alerted to the prospect that "[s]omething is rotten in the state of Denmark"[5] when she signed a tax return that deducted almost 70% of the couple's gross income (App. 3 n.2)--something that on its face reduced the family's apparent income to a level totally at odds with the couple's lifestyle. And finally, as the Tax Court noted, there is no indication that Richard was deceiving Nancy such that her opportunity to learn about the deductions or their propriety was thwarted (App. 13).

But in the face of those things Nancy simply played ostrich, hiding her head in the proverbial sand. She admits that she never reviewed or discussed the returns with Richard or anyone else, nor did she present any evidence to the Tax Court indicating that

---

[5]     William Shakespeare, Hamlet act 1, sc. 4, line 90.

6

she attempted to disentangle the tax knot that she had to know about (App. 41-43). That total lack of inquiry forecloses her ability to satisfy Section 6016(b)(1)(C), even under the less demanding Price formulation.

That inability alone scotches the availability of relief under Section 6015(b)(1) (Friedman v. Comm'r, 53 F.3d 523, 532 (2d Cir. 1995)). But the Tax Court had a second string to its bow: It also determined that Nancy could not show it would be inequitable to hold her liable under all the facts and circumstances, as required by Section 6015(b)(1)(D)(App. 13-16). We agree on that score as well.

That equitable evaluation also implicates a number of possible factors (Rev. Proc. 2000-14 §4.02 to .03 (found at 2000WL 42026)).[6] Here the Tax Court focused primarily on two of those factors in reaching the conclusion that it would not be inequitable to hold Nancy liable on her joint return.

First, the Tax Court noted that Nancy received significant benefits over and above normal support (though some of those benefits were realized several years later) (App. 15; Hayman, 992 F.2d at 1262; Rev. Proc. 2000-15 §4.03(2)(c)).[7] For example, in

---

[6]    Although that Procedure (later superseded by Rev. Proc. 2003-61) actually addressed equitable factors in terms of Section 6015(f) and not specifically as to Section 6015(b)(1)(D), we see no reason why the considerations would be any different for the wholly comparable concepts set out in Sections 6015(b)(1)(D) and 6015(f).

[7]    Again the Tax Court was entitled to discount Nancy's testimony that her standard of living stayed the same and that she did not "realize in [her] mind any benefit from the deductions," in light of the substantial objective evidence to the contrary (App. 46).

1993 (just as the Commissioner was filing tax liens against them) Nancy and Richard took two European vacations in the span of a few months (Stip. ¶¶26-28). Additionally, after the tax years at issue Nancy and Richard frequently transferred substantial moneys (funds they could have applied towards their tax liability) to their children, but they then regularly withdrew that money for their own living expenses--including those vacations (App. 14-18, 21-22, 29-30, 34-35, 50).

Next the Tax Court emphasized that Nancy's continuous attempts to hinder collection of the taxes at issue also cuts against her argument that relief would be appropriate based on a good faith effort to comply with federal income tax laws (App. 15-16; Rev. Proc. 2000-15 §4.03(2)(e)). As Nancy plainly stipulated, while she has not made any voluntary payments on her tax liabilities, she has liquidated numerous assets, taken out liens on previously unencumbered property and--as already discussed--"transferred" to her children large sums of money that she and Richard then recaptured to support their own lifestyle (Stip. ¶¶13-24, 28-30, 34-35, 50). Given that factual backdrop, the Tax Court surely committed no error, let alone clear error, when it characterized Nancy's and Richard's activities as a systematic ploy to hinder collection (App. 16).

Finally, the Tax Court did not err when it concluded that it was not an abuse of the Commissioner's discretion to deny Nancy equitable relief under Section 6015(f) (App. 17; Mitchell v. Comm'r, 292 F.3d 800, 807 (D.C. Cir. 2002)). That statute tracks verbatim the language of Section 6015(b)(1)(D). Because Nancy was ineligible for relief

8

under Section 6015(b) precisely because she failed to satisfy Section 6015(b)(1)(D)(even apart from her shortfall under Section 6015(b)(1)(C), it necessarily follows that the Commissioner did not abuse his discretion by withholding relief under Section 6015(f).

For all these reasons we AFFIRM the Tax Court's decision in all respects.