T.C. Memo. 2009-256

UNITED STATES TAX COURT

LOIS WIENER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17984-04.                    Filed November 10, 2009.

<u>Larry Kars</u>, for petitioner.

<u>Shawna A. Early</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  This case is before the Court on petitioner's motion for administrative and litigation costs pursuant to section 7430 and Rule 231.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at the time petitioner filed her petition, and all Rule references are to the Tax Court
(continued...)

In <u>Wiener v. Commissioner</u>, T.C. Memo. 2008-230 (Wiener I), we granted petitioner's request for relief under section 6015(f) with respect to petitioner's Federal income tax liabilities for 1979-81. Petitioner timely moved to vacate our decision in Wiener I and moved for administrative and litigation costs. We granted petitioner's motion to vacate our decision in order to consider petitioner's motion for administrative and litigation costs. For the reasons that follow, we shall deny petitioner's motion for costs.

Background

In Wiener I we made extensive findings of fact, and we incorporate those findings in this opinion by reference. For convenience and clarity, we repeat below the facts necessary for disposition of the instant motion. Petitioner resided in New York when the petition was filed.

Petitioner and Jay Wiener (Mr. Wiener) were married in 1952. As of the date of trial, they were still married. Petitioner graduated with a bachelor of arts degree from Syracuse University in 1951. Her course work did not include classes in accounting, finance, or math. From 1951 through 1954 petitioner worked in the customer service department of AT&T. In 1954 petitioner became a full-time homemaker, and she remained a full-time

---

[1](...continued)
Rules of Practice and Procedure.

homemaker until around the time of trial, when she began selling clothing from her home.

During the years in issue petitioner and Mr. Wiener (collectively, the Wieners) maintained a joint checking account. Petitioner wrote checks for routine household expenses from the account, but she relied on Mr. Wiener to make large purchases and handle the couple's investments and tax matters. The bank statements for the joint checking account were mailed to the Wieners' home address. Mr. Wiener reconciled the account and monitored the account balance.

In 1979 Mr. Wiener invested in Sinclair Global Arbitrage (SGA), a limited partnership. On November 9, 1979, Mr. Wiener wrote two checks to SGA from the Wieners' joint checking account totaling $106,250; on May 13, 1980, Mr. Wiener wrote a third check to SGA for $58,839.84. Petitioner did not sign any of the checks, nor did she know about them. Mr. Wiener did not tell petitioner about the investment in SGA.

Mr. Wiener received a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., for 1981 that showed he was a limited partner in SGA. Petitioner's name did not appear on the Schedule K-1, nor did it appear on any correspondence from SGA.

The Wieners filed joint Federal income tax returns for 1979-81. Mr. Wiener's accountant, Martin Bond (Mr. Bond), prepared the returns on the basis of information provided by Mr. Wiener

and Mr. Wiener's office manager; petitioner did not provide information for the preparation of the tax returns, nor did she discuss the returns with Mr. Bond. After Mr. Bond prepared each year's return, he brought the return to Mr. Wiener's office, where Mr. Wiener signed both his name and petitioner's name to the return and mailed it to the Internal Revenue Service (IRS). Petitioner did not review any of the returns for 1979-81. On each of the returns, the Wieners reported an overpayment and claimed a refund. Petitioner did not know about the refunds, and she did not benefit from them beyond normal support.

The Wieners' joint returns for 1979, 1980, and 1981 deducted SGA partnership losses of $128,789, $610,080, and $207,517, respectively. Respondent audited SGA for 1979-81, disallowed certain partnership deductions, and mailed a notice of deficiency to the Wieners. Petitioner was not involved in the audit, and Mr. Wiener did not tell her about it.

A petition was filed in this Court on behalf of the Wieners seeking a redetermination of the deficiencies for 1979-81, docket No. 27006-90. On July 17, 1991, the Court entered a stipulated decision in docket No. 27006-90. Petitioner did not sign the stipulated decision. In accordance with the stipulated decision, on August 23, 1991, respondent assessed Federal income tax deficiencies against the Wieners for 1979 and 1980, and on September 30, 1991, respondent assessed an income tax deficiency

against the Wieners for 1981 (collectively the 1979-81 tax liabilities).[2]

On November 29, 1991, about 2 or 3 months after respondent assessed the 1979-81 tax liabilities, petitioner transferred the marital home (the Morris Lane property) to the Charles Wiener Trust in consideration for substantial sums previously advanced by the trust to Mr. Wiener.  On the date of the transfer, petitioner did not know about the 1979-81 tax liabilities or that she was personally liable for them.  Following the transfer, the Wieners continued to live at the Morris Lane property, and they paid the mortgage and other household expenses from their joint checking account.

On January 6, 1992, respondent filed a notice of Federal tax lien against the Wieners with respect to the 1979-81 tax liabilities.

In 2001, pursuant to an agreement between the IRS and the Wieners, the Federal tax lien that had attached to the Morris Lane property was released, and the Morris Lane property was sold.  The Wieners purchased a new residence in Armonk, New York, that, under the agreement with the IRS, was titled in their joint names and was subject to the Federal tax lien.  The new home was

---

[2]We are unable to determine from the record whether the assessed amounts include additions to tax or penalties.  We assume that respondent assessed interest as required by the Internal Revenue Code when he assessed the income tax deficiencies.

purchased with the proceeds from the sale of the Morris Lane property. At the time of trial the Wieners resided in the new residence, and petitioner listed the residence as an asset on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, that she submitted to respondent on or about March 28, 2005.

In 2001, in connection with collection activities related to the 1979-81 tax liabilities, petitioner learned for the first time that the liabilities were attributable to Mr. Wiener's investment in SGA. At that time one of respondent's revenue officers suggested that petitioner apply for relief under section 6015. On or about March 26, 2002, petitioner filed Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), on which she requested relief from joint and several liability for the 1979-81 liabilities pursuant to section 6015. On or about October 15, 2003, respondent informed petitioner that her request for relief had been denied. Petitioner filed a protest with respondent's Appeals Office. On June 24, 2004, respondent issued a notice of determination that denied petitioner's request for relief under section 6015 for each of the years in issue. In the notice respondent stated simply: "We did not find you eligible for relief" under section 6015(b), (c), or (f) and gave no indication of the analysis the Appeals Office used or the information it relied on to make its

determination. Petitioner timely petitioned this Court pursuant to section 6015(e), alleging that respondent's determination was in error. Petitioner argued she was entitled to innocent spouse relief for 1979-81 under section 6015(b) or, in the alternative, under section 6015(f).

We held in Wiener I that petitioner was not entitled to relief under section 6015(b) because even if she lacked actual knowledge of the partnership losses claimed on the 1979-81 Federal income tax returns, she had a duty to inquire about the returns and the losses they showed, and she failed to satisfy the duty. Accordingly, we held petitioner had constructive knowledge of the understatements of tax on the 1979-81 returns, and such knowledge was fatal to petitioner's request for relief under section 6015(b). However, we also held that petitioner was entitled to equitable relief under section 6015(f). We based our holding with respect to section 6015(f) on credibility determinations with respect to certain testimony, a thorough review of the evidence, and a careful analysis of section 6015(f) and, in particular, Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. 447, 448, which sets forth the conditions under which the Commissioner will grant taxpayers equitable relief from joint and several liability for Federal income tax.

## Discussion

I.   Section 7430

Section 7430(a) allows a taxpayer to recover reasonable administrative and litigation costs incurred in an administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty.  Reasonable administrative costs are the reasonable and necessary costs incurred by the taxpayer in connection with the administrative proceeding, including administrative fees imposed by the Commissioner, reasonable fees paid or incurred to retain the services of a representative who is licensed to practice before the IRS, reasonable expenses of expert witnesses, and reasonable costs for any study, analysis, or report that is necessary to the taxpayer's case.  Sec. 7430(c)(2); sec. 301.7430-4(b)(1), Proced. & Admin. Regs. Similarly, reasonable litigation costs include reasonable court costs, reasonable attorney's fees, reasonable expenses of expert witnesses, and reasonable costs of any study, analysis, or report necessary to the taxpayer's case.  Sec. 7430(c)(1).

To recover administrative and litigation costs under section 7430(a), the taxpayer must satisfy each of the following requirements:  (1) The taxpayer must not have unreasonably protracted the administrative or court proceedings, sec. 7430(b)(3); and (2) the taxpayer must have been the "prevailing

party" in the administrative or court proceeding, sec.
7430(c)(4)(A). In addition, with respect to a request for
litigation costs, the taxpayer must also prove that he or she
exhausted all administrative remedies available within the IRS,
sec. 7430(b)(1).

Respondent concedes that petitioner exhausted all
administrative remedies available within the IRS and did not
unreasonably protract the proceedings. Thus, the dispositive
issue in this case is whether petitioner was the prevailing party
in Wiener I.

A taxpayer is the prevailing party if: (1) The taxpayer
substantially prevailed with respect to the amount in controversy
or with respect to the most significant issue or set of issues;
(2) the taxpayer's net worth does not exceed $2 million; and (3)
the position of the Commissioner was not substantially justified.
Sec. 7430(c)(4); see also sec. 301.7430-5(a), Proced. & Admin.
Regs. The taxpayer has the burden of proof with respect to
requirements (1) and (2); the Commissioner has the burden of
proof with respect to requirement (3). Sec. 7430(c)(4)(B); Rule
232(e).

II. The Section 7430(c)(4) Requirements

A. The "Substantially Prevailed" Requirement

The term "prevailing party" means any party in a proceeding
to which section 7430(a) applies (other than the United States)

who has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented. Sec. 7430(c)(4)(A); sec. 301.7430-5(e), Proced. & Admin. Regs. Any determination as to whether a party is the prevailing party may be made by agreement of the parties; by the Commissioner, in the case of a final determination following an administrative proceeding; or by a court, in the case of a final determination made by a court. Sec. 7430(c)(4)(C).

In Wiener I petitioner prevailed with respect to the amount in controversy inasmuch as we granted petitioner relief from joint and several liability. Petitioner also prevailed with respect to the most important issue; i.e., whether she was entitled to relief under section 6015. Accordingly, we conclude that petitioner substantially prevailed in Wiener I.

B.    The Net Worth Requirement

Section 7430(c)(4)(A)(ii) provides, in relevant part, that the term "prevailing party" means a party who meets the requirements of 28 U.S.C. sec. 2412(d)(2)(B). Title 28 U.S.C. sec. 2412(d)(2)(B) defines the term "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed". Further, Rule 231(b)(4) provides that a motion for an award of reasonable administrative or litigation costs must include a statement that the taxpayer meets the net

worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) and must be supported by an affidavit executed by the moving party and not by counsel for the moving party.

After an initial foot fault,[3] petitioner satisfied the requirements of 28 U.S.C. sec. 2412(d)(2)(B) and Rule 231(b)(4) by filing and signing an affidavit attesting that on September 24, 2004, her net worth did not exceed $2 million.  Respondent does not dispute the substance of the affidavit.  Accordingly, we conclude that petitioner has satisfied the net worth requirement.

C.    The "Not Substantially Justified" Requirement

The next issue we must consider is whether respondent's position was substantially justified.  If it was, petitioner cannot be the prevailing party, and we will not award administrative or litigation costs.  Sec. 7430(c)(4)(B); see also Paul Frehe Enters., Inc. v. Commissioner, 106 T.C. 436, 437 (1996).  Whether the Commissioner's position was substantially justified depends on all the facts and circumstances.  Price v. Commissioner, 102 T.C. 660, 662 (1994), affd. without published

---

[3]Petitioner's motion for administrative and litigation costs, which was signed by petitioner's counsel but not by petitioner, stated that petitioner's net worth was not in excess of $2 million.  The motion was not accompanied by an affidavit attesting that petitioner's net worth did not exceed $2 million. Respondent noted the error in his response to petitioner's motion for administrative and litigation costs.  Petitioner filed a motion for leave to file such an affidavit, and we granted petitioner's motion.

opinion sub nom. TSA/Stanford Associates, Inc. v. Commissioner,
77 F.3d 490 (9th Cir. 1996).  A position is substantially
justified if it has a reasonable basis in fact and law and is
justified to a degree that would satisfy a reasonable person.
Pierce v. Underwood, 487 U.S. 552, 565 (1988).  The fact that the
Commissioner ultimately loses or concedes an issue is not
determinative with respect to a taxpayer's claim for
administrative and litigation costs.  Vines v. Commissioner, T.C.
Memo. 2006-258.  Various courts have held that the Commissioner's
position is substantially justified where, inter alia, resolution
of the issue required an analysis of facts that did not clearly
favor either party's position, see Kaffenberger v. United States,
314 F.3d 944, 960 (8th Cir. 2003), and where there was legal
precedent to support the Commissioner's position, see DeVenney v.
Commissioner, 85 T.C. 927, 930 (1985); ABC Rentals of San
Antonio, Inc. v. Commissioner, T.C. Memo. 2000-47.

    Where a taxpayer seeks both administrative and litigation
costs, we apply the "substantially justified" standard as of the
two separate dates on which the Commissioner took a position,
first in the administrative proceeding and later in the court
proceeding.  Sec. 7430(c)(7)(A) and (B); Maggie Mgmt. Co. v.
Commissioner, 108 T.C. 430, 442 (1997).  For purposes of the
administrative proceeding, the Commissioner's position is the
position articulated in the notice of determination; for purposes

of the court proceeding, the Commissioner's position is the position set forth in his answer to the taxpayer's petition. Maggie Mgmt. Co. v. Commissioner, supra at 442. Although the Commissioner's positions in the administrative and court proceedings are often considered separately, we can consider them together where the Commissioner maintains the same position throughout. Foy v. Commissioner, T.C. Memo. 2005-116.

In deciding whether respondent's position was substantially justified, it is useful to consider the Code's approach to relief from joint and several liability. Section 6013(d)(3) provides that if a married couple files a joint Federal income tax return, the couple's liability for the tax shall be joint and several. However, strict adherence to the rule of joint and several liability can lead to unjust results where, for example, a taxpayer becomes burdened with onerous tax liabilities created by a former spouse through no fault of the taxpayer. See, e.g., Kwong v. Commissioner, 65 T.C. 959, 963 (1976). For this reason, Congress in 1971 enacted section 6013(e) (the predecessor to section 6015) to relieve taxpayers of joint and several liability in certain circumstances. Mora v. Commissioner, 117 T.C. 279, 284 (2001).

In 1998 Congress repealed section 6013(e) and enacted section 6015, which applies to liabilities arising after July 22, 1998, as well as those that arose before July 22, 1998, but

remained unpaid as of July 22, 1998.  Sec. 1.6015-8, Income Tax Regs.  Under section 6015 a taxpayer may be relieved from joint and several liability under three circumstances.  First, a taxpayer who filed a joint Federal income tax return with his or her spouse may seek relief under section 6015(b) if, among other things, the taxpayer establishes that in signing the return he or she did not know, and had no reason to know, that there was an understatement of tax on the return and that it would be inequitable to hold the taxpayer liable for the deficiency.  Second, in the case of a taxpayer who is no longer married to, or is legally separated from, the person with whom he or she filed the joint Federal income tax return, section 6015(c) provides for relief under certain circumstances.[4]  Finally, a taxpayer who does not qualify for relief under section 6015(b) or (c) may seek equitable relief under section 6015(f).

    1.   <u>Section 6015(b)</u>

Respondent maintained the same position throughout the administrative and court proceedings with respect to petitioner's request for relief under section 6015(b).  Specifically, respondent argued petitioner was not entitled to relief because she failed to fulfill her duty of inquiry, and she therefore had constructive knowledge of the understatements for 1979-81.

_____

[4]Because petitioner is still married to Mr. Wiener, and because the parties agree that sec. 6015(c) does not apply, we need not discuss sec. 6015(c) in any greater depth.

Respondent's position had a reasonable basis in fact and law. Indeed, we sustained respondent's determination to deny petitioner's request for section 6015(b) relief for the reasons respondent cited in the court proceedings. As we wrote in Wiener I:

> We conclude that petitioner, under the facts and circumstances of this case, had a duty to inquire regarding the partnership losses claimed on her 1979-81 returns. Because she failed to satisfy her duty of inquiry, we find that she had reason to know of the understatements. [Citations and fn. ref. omitted.]

We conclude, therefore, that respondent's position with respect to petitioner's request for relief under section 6015(b) was substantially justified.

### 2. Section 6015(f)

Respondent maintained throughout the administrative and court proceedings that petitioner was not entitled to equitable relief. However, the basis for respondent's position in the administrative proceeding is unclear. Respondent's notice of determination simply states: "We did not find you eligible for relief under Section 6015(f)."

Before we issued our Opinion in Porter v. Commissioner, 132 T.C. ___ (2009),[5] we examined the Commissioner's determinations

---

[5]Sec. 6015 was amended by the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061. We acknowledged in Wiener I that the 2006 amendments to sec. 6015 raised questions concerning the appropriate standard of review in sec. 6015(f) cases. See Porter v. Commissioner, 130 T.C. 115,

(continued...)

under section 6015(f) for abuse of discretion.  However, because the record in Wiener I did not contain respondent's analysis in support of his determination under section 6015(f),[6] we were unable to apply an abuse of discretion standard.  Instead we determined de novo whether the Commissioner properly concluded that petitioner was not entitled to equitable relief under section 6015(f).  On the basis of that fact-intensive analysis, we ultimately concluded that petitioner was entitled to relief under section 6015(f).

We shall apply a similar analysis in this proceeding.  This time, however, rather than ask whether respondent's position with respect to petitioner's request for section 6015(f) relief was correct on the merits, we will examine the record to determine whether respondent's position had a reasonable basis in fact and law.

---

[5](...continued)
144-146 (2008) (concurring opinion of Judge Wherry, in which seven other Judges joined).  In a subsequent Opinion in Porter v. Commissioner, 132 T.C. ___ (2009), we resolved the issue by holding that a de novo standard of review is the appropriate standard of review under sec. 6015, including under subsec. (f).

[6]Neither the notice of determination nor the accompanying supplemental case memorandum contained any analysis or recited sufficient facts for the Court to review using an abuse of discretion standard.

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>
> > (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

The Commissioner has proscribed procedures for analyzing a request for relief under section 6015(f). The procedures IRS personnel were to apply to the review of petitioner's request are set forth in Rev. Proc. 2000-15, supra.[7] Rev. Proc. 2000-15, sec. 4.01, states that, before the Commissioner will consider the requesting spouse's request for relief under section 6015(f), the requesting spouse must satisfy the following seven threshold conditions:

> (1) The requesting spouse filed a joint return for the taxable year for which relief is sought;
>
> (2) Relief is not available to the requesting spouse under § 6015(b) or 6015(c);

---

[7]As we stated in Wiener I, Rev. Proc. 2003-61, 2003-2 C.B. 296, which superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, is effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of that date. Petitioner requested relief on Mar. 26, 2002, and respondent issued the preliminary determination letter before Nov. 1, 2003; therefore, Rev. Proc. 2003-61, supra, is inapplicable here.

(3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;

(4) Except as provided in the next sentence, the liability remains unpaid. A requesting spouse is eligible to be considered for relief in the form of a refund of liabilities for: (a) amounts paid on or after July 22, 1998, and on or before April 15, 1999; and (b) installment payments, made after July 22, 1998, pursuant to an installment agreement entered into with the Service and with respect to which an individual is not in default, that are made after the claim for relief is requested;

(5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;

(6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse. If there were disqualified assets transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of such disqualified assets. For this purpose, the term "disqualified asset" has the meaning given such term by § 6015(c)(4)(B); and

(7) The requesting spouse did not file the return with fraudulent intent.

If a requesting spouse satisfies each of the seven threshold conditions, Rev. Proc. 2000-15, supra, instructs IRS personnel to determine whether the requesting spouse satisfies the additional requirements set forth in either Rev. Proc. 2000-15, sec. 4.02 or 4.03.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, provides that, in cases where the threshold conditions set forth in Rev. Proc. 2000-15, sec. 4.01, have been satisfied but the requesting

spouse does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, equitable relief may be granted under section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse responsible for all or part of the liability.  In making the decision, the Commissioner will weigh a number of positive and negative factors.  The following list is not exclusive, and no single factor is determinative:

> (1) Factors weighing in favor of relief.  The factors weighing in favor of relief include, but are not limited to, the following:

>> (a) Marital status.  The requesting spouse is separated (whether legally separated or living apart) or divorced from the nonrequesting spouse.

>> (b) Economic hardship.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

>> (c) Abuse.  The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

>> (d) No knowledge or reason to know.  In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. In the case of a liability that arose from a deficiency, the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency.

>> (e) Nonrequesting spouse's legal obligation. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at

the time the divorce decree or agreement was entered into, that the non-requesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

(2) Factors weighing against relief. The factors weighing against relief include, but are not limited to, the following:

(a) Attributable to the requesting spouse. The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse.

(b) Knowledge, or reason to know. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed. This is an extremely strong factor weighing against relief. Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, and in very limited situations where the requesting spouse knew or had reason to know of an item giving rise to a deficiency.

(c) Significant benefit. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency. See § 1.6013-5(b).

(d) Lack of economic hardship. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) Noncompliance with federal income tax laws. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>.
The requesting spouse has a legal obligation
pursuant to a divorce decree or agreement to pay
the liability.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449.

In Wiener I respondent argued that petitioner failed to
satisfy Rev. Proc. 2000-15, sec. 4.01(5), because petitioner
transferred the Morris Lane property to a family trust for less
than adequate consideration in an attempt to place her assets
beyond the reach of respondent.  In support, respondent cited
<u>Doyle v. Commissioner</u>, T.C. Memo. 2003-96, affd. 94 Fed. Appx.
949 (3d Cir. 2004), in which we found it significant that the
taxpayer and her husband had tried to make themselves collection
proof by encumbering their personal residence, transferring money
to their children, and taking expensive vacations.  In the
alternative, respondent argued that even if petitioner satisfied
the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, the
factors enumerated in Rev. Proc. 2000-15, sec. 4.03, weighed
against granting petitioner's request for equitable relief.

Although we ultimately granted petitioner's request for
section 6015(f) relief, respondent's position found factual
support in the record and legal support in our holding in <u>Doyle
v. Commissioner</u>, <u>supra</u>,[8] and similar cases in which taxpayers

---

[8]Admittedly, <u>Doyle v. Commissioner</u>, T.C. Memo. 2003-96,
affd. 94 Fed. Appx. 949 (3d Cir. 2004), is not precisely
analogous to this case, but we think the facts are similar enough
(continued...)

attempted to transfer assets to avoid paying their tax liabilities.[9]  Respondent's position throughout the administrative and litigation proceedings reflected his determination that petitioner, acting with knowledge of the 1979-81 tax liabilities, had participated in an effort to make herself and her husband collection proof.  That determination was apparently based on respondent's evaluation of information submitted by petitioner and her husband and a judgment regarding the credibility of petitioner and her husband.  Under these circumstances, where the credibility of petitioner and her husband was a legitimate concern and the facts did not clearly favor one party's position over the other party's position, we do not believe that respondent's position was unreasonable.  See Kaffenberger v. United States, 314 F.3d at 960.  Accordingly, we conclude that respondent's position was substantially justified.

---

(...continued)
that it was reasonable for respondent to cite Doyle for the proposition that a taxpayer who transfers or encumbers assets in an effort to thwart the Commissioner's collection activity is not entitled to sec. 6015 relief.

[9]See, e.g., Etkin v. Commissioner, T.C. Memo. 2005-245 (taxpayer's claim for sec. 6015(f) relief denied where taxpayer's husband transferred property to her as part of a scheme to frustrate the Commissioner's collection activities); see also Ohrman v. Commissioner, T.C. Memo. 2003-301 (taxpayer's claim for sec. 6015(f) relief was denied where taxpayer received a transfer of a disqualified asset from her former spouse in violation of Rev. Proc. 2000-15, sec. 4.01(6), 2000-1 C.B. 447, 448), affd. 157 Fed. Appx. 997 (9th Cir. 2005).

III.  Conclusion

Although we granted petitioner's request for relief under section 6015(f) in Wiener I, our decision turned on a fact-intensive analysis and an evaluation of the credibility of petitioner.  The actions of petitioner and her husband with respect to the transfer of their home and the reporting of trust interests on forms submitted to respondent reasonably raised suspicions that respondent resolved by deciding not to grant relief under section 6015(f).  Although we ultimately accepted petitioner's explanation of these actions as credible, the mere fact that we held in favor of petitioner does not establish that respondent's position was not substantially justified.  On the contrary, we conclude that respondent's position in the administrative and court proceedings was substantially justified, and petitioner therefore shall not be treated as the prevailing party in Wiener I for purposes of section 7430.

We have considered all remaining arguments made by the parties and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing, petitioner's motion for administrative and litigation costs will be denied.

<u>An appropriate order and decision will be entered</u>.