T.C. Memo. 2017-135

UNITED STATES TAX COURT

NINA H. KAZAZIAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11652-15.                                    Filed July 10, 2017.

Nina H. Kazazian, pro se.

<u>Gerard Mackey</u> and <u>Peter N. Scharff</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This case is before the Court on petitioner's motion for

award of litigation and administrative costs pursuant to section 7430 and Rule

231.[1]  Neither party requested a hearing on this matter, and no material fact is in

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and

(continued...)

[*2] dispute. We will therefore decide petitioner's motion on the basis of the parties' submissions and the existing record. See Rule 232(a)(1).

We conclude that petitioner is not a "prevailing party" within the meaning of section 7430. Even if she were a prevailing party, she has not proven that she incurred meaningful costs with respect to the "innocent spouse" issue that is the subject of this case. We will accordingly deny her request for litigation and administrative costs.

Background

The following facts are derived from the parties' pleadings and motion papers, including the declarations and the exhibits attached thereto. Petitioner resided in Colorado when she filed her petition.[2]

During 2009 petitioner practiced law as a sole proprietor and owned rental real estate. She filed a joint Federal income tax return for 2009 with Michael J. Stackpool. This return was prepared by Hulet, Watson, and Associates (Hulet), and was filed on November 2, 2010. Included with the 2009 return was a

_____

[1](...continued)
Procedure. We round all monetary amounts to the nearest dollar.

[2]Petitioner moved to Sweden after she filed her petition but before she filed her motion for litigation and administrative costs. Absent stipulation to the contrary, the proper appellate venue is generally the circuit in which the taxpayer resided on the date that the Tax Court petition was filed. Sec. 7482(b)(1)(A).

[*3] Schedule C, Profit or Loss From Business, that reported income and expenses attributable to petitioner's legal practice, and a Schedule E, Supplemental Income and Loss, that reported income, expenses, and losses attributable to petitioner's rental real estate activities. The 2009 joint return showed an overpayment of $38,502 and requested a refund. The Internal Revenue Service (IRS) paid the refund by depositing $23,612 into a bank account titled in Mr. Stackpool's name and $14,890 into a bank account titled in petitioner's name.

Petitioner and Mr. Stackpool separated in August 2010 and divorced in 2011. For 2010 petitioner filed her Form 1040, U.S. Individual Income Tax Return, as married filing separately, and for 2011 she filed her return as single. For each year she reported the income and expenses of her law practice on a Schedule C and the income and expenses of her rental real estate activities on a Schedule E.

Respondent selected the 2009 joint return and petitioner's 2010 and 2011 individual returns for examination. During the examination petitioner and Mr. Stackpool each requested, with respect to the 2009 joint return, relief from joint and several liability pursuant to section 6015 (commonly called innocent spouse relief) by filing a Form 8857, Request for Innocent Spouse Relief. In its examination report the IRS proposed: (1) to disallow deductions for petitioner's Schedule E losses for all three years on the ground that they were passive losses under

**[\*4]** section 469; (2) to disallow a claimed deduction for a net operating loss (NOL) carryforward to 2009 arising from petitioner's reported Schedule E loss for 2008; (3) to disallow a portion of petitioner's Schedule C deductions for lack of substantiation; (4) to impose accuracy-related penalties under section 6662(a) for all three years; and (5) to reject both petitioner's and Mr. Stackpool's requests for innocent spouse relief.

Petitioner and Mr. Stackpool challenged the examination report at the IRS Appeals Office. Following a conference the Appeals officer (AO) recommended the following adjustments to the examination report: (1) 60% of petitioner's claimed deductions for Schedule E losses and deduction for the NOL carryforward would be allowed, given the hazards of litigation on the question whether she qualified as a "real estate professional," see sec. 469(c)(7); (2) petitioner's claimed Schedule C deductions would be allowed in full as having been adequately sub-stantiated; and (3) the IRS would concede the accuracy-related penalty. These adjustments yielded a proposed deficiency of $14,076 for 2009 and smaller defic-iencies for 2010 and 2011.

On the question of relief from joint and several liability, the AO concluded that Mr. Stackpool was entitled to partial relief and petitioner to none. With re-spect to section 6015(b) and (c), the AO concluded that petitioner was entitled to

[*5] no relief because all of the erroneous items were attributable to her rental real estate activities and thus were known to her. With respect to equitable relief under section 6015(f), the AO concluded that only one of the seven factors (viz., marital status) in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, weighed in petitioner's favor. As to the other factors the AO found (among other things) that petitioner: (1) owned substantial real estate assets, including a condo in Vail, Colorado, and did not show that liability for the 2009 tax deficiency would cause her economic hardship; (2) had actual knowledge of the erroneous items giving rise to the tax deficiency; and (3) derived a substantial benefit from the erroneous items by receiving a tax refund of $14,890, largely attributable to withholding from Mr. Stackpool's wages.

Mr. Stackpool and petitioner both alleged spousal abuse in support of their requests for innocent spouse relief. The AO noted that their short-lived marriage was tumultuous, with the police having been called to their residence on several occasions. Indeed, Mr. Stackpool ultimately secured a judicial restraining order against petitioner, which she violated on at least one occasion, leading to her arrest and jailing. But the AO concluded that any abuse petitioner encountered played no role in the preparation and filing of the 2009 joint return. Petitioner and Mr. Stackpool had separated before then, and she actively engaged with Hulet in the

**[*6]** details of preparing the 2009 return, as evidenced by substantial email communications between them. Taking all of these facts into account, the AO concluded that petitioner was entitled to no relief and that Mr. Stackpool was entitled to relief with respect to $8,512 of the $14,076 proposed deficiency.[3]

On March 12, 2015, petitioner executed a Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Over-assessment, consenting to the assessment of the deficiency but not to the denial of innocent spouse relief for 2009. Mr. Stackpool executed a Form 870-AD by which he consented to the granting of partial relief from joint and several liability and an assessment of $5,564 for 2009 ($14,076 − $8,512). And petitioner executed Forms 870-AD covering all issues for 2010 and 2011.

On April 2, 2015, the IRS sent petitioner a final Appeals determination rejecting her request for innocent spouse relief for 2009. On May 4, 2015, she timely petitioned this Court to challenge that determination. In his answer and amended answer respondent adhered to his position that petitioner was entitled to no innocent spouse relief.

---

[3]The record does not include the AO's analysis of Mr. Stackpool's request for innocent spouse relief. However, his analysis of petitioner's request for relief states that the "nonrequesting spouse wants to be relieved of $8,512 because that is the amount of withholdings he overpaid to the requesting spouse."

**[\*7]**   The case was calendared for trial on June 13, 2016, in New York.  On May 10, 2016, the parties filed a stipulation of settled issues in which they agreed that "petitioner is granted relief under I.R.C. § 6015(f) in the amount of $8,512.00 for taxable year 2009."  On July 24, 2016, petitioner filed a motion for reasonable litigation and administrative costs, to which respondent filed a response on September 22, 2016.  Extensive briefing by both parties ensued.

Discussion

Section 7430 provides for the award of litigation and/or administrative costs to a taxpayer in a proceeding involving the determination of any tax, interest, or penalty.  Such an award may be made where the taxpayer:  (1) is the "prevailing party"; (2) has exhausted administrative remedies within the IRS; (3) has not unreasonably protracted the proceeding; and (4) has claimed "reasonable" costs. Sec. 7430(a), (b)(1), (3), (c)(1) and (2); Polz v. Commissioner, T.C. Memo. 2011-117; Nguyen v. Commissioner, T.C. Memo. 2003-313.  Respondent concedes that the second and third of these requirements are satisfied here.

These requirements are conjunctive.  Thus, failure to satisfy any one precludes an award of costs to the taxpayer.  See Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Marten v. Commissioner, T.C. Memo. 2000-186.  The taxpayer

**[*8]** has the burden of establishing that he or she has satisfied each of these requirements.  Rule 232(e).

To be the "prevailing party," the taxpayer:  (1) must have "substantially prevailed" with respect to either the amount in controversy or the most significant issue or set of issues presented and (2) must satisfy a net worth requirement.  Sec. 7430(c)(4)(A).  Respondent concedes that petitioner meets the net worth requirement.  A taxpayer will not be treated as the prevailing party if "the position of the United States in the proceeding was substantially justified."  Sec. 7430(c)(4)(B)(i). The Commissioner has the burden of proving that his position was substantially justified.  Id.; see Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 440-441 (1997).

Where a taxpayer seeks both litigation and administrative costs, we apply the "substantially justified" standard with respect to the IRS' position on two separate dates.  See id. at 442-444.  For purposes of the administrative proceeding, the IRS' position is that taken at the earlier of:  (1) the date the taxpayer receives the determination of the IRS Appeals Office or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B).  For purposes of a Tax Court proceeding, the IRS' position is that taken at the time the Commissioner files his answer.  E.g., Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988), aff'g 89 T.C. 79 (1987).

**[\*9]** Respondent maintained the same position in the final Appeals determination and in his answer to the petition, viz., that petitioner was not entitled to relief from joint and several liability for 2009 under section 6015(b), (c), or (f). We will accordingly evaluate those positions together. See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144; Maggie Mgmt. Co., 108 T.C. at 442.

A.      Petitioner's Status as a "Prevailing Party"

The position of the United States is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person" and has a "reasonable basis both in law and fact." Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see also Powers v. Commissioner, 100 T.C. 457, 470 (1993), aff'd in part, rev'd in part, 43 F.3d 172 (5th Cir. 1995); Sher, 89 T.C. at 84. The determination of reasonableness is based on all the facts of the case and the available legal precedent. Coastal Petrol. Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990).

In determining whether the Commissioner's position was "substantially justified," we consider the basis for his legal position and the manner in which he maintained that position. "The Commissioner's position may be substantially justified even if incorrect 'if a reasonable person could think it correct.'" Fitz-

**[*10]** patrick v. Commissioner, T.C. Memo. 2017-88, at *5-*6 (quoting Maggie Mgmt. Co., 108 T.C. at 443). The fact that the IRS loses a case or makes a concession "does not by itself establish that the position taken is unreasonable" but is "a factor that may be considered." Maggie Mgmt. Co., 108 T.C. at 443; see Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Fitzpatrick, at *6;

We conclude that the IRS' position in this case, as reflected in the final Appeals determination denying petitioner's claim for relief under section 6015(b), (c), and (f), was "substantially justified." To be entitled to relief under subsection (b), the taxpayer must show (among other things) that in signing the return she did not know, and had no reason to know, there was an understatement of tax on the return. Sec. 6015(b)(1)(C). The AO reasonably found that petitioner was directly involved in preparation of the 2009 return and had actual knowledge of the erroneous items on that return--i.e., the partially disallowed real estate loss deduction and the partially disallowed NOL carryforward deduction--because those items were 100% attributable to activities in which she actively engaged. See, e.g., Doyle v. Commissioner, T.C. Memo. 2003-96, aff'd, 94 F. App'x 949 (3d Cir. 2004).

**[\*11]** Petitioner asserts that the erroneous items were not attributable to her because Hulet, acting on behalf of Mr. Stackpool, allegedly made the decision to treat her as a real estate professional without consulting her. There is no factual basis for this argument. Petitioner actively engaged with Hulet in the preparation of the 2009 joint return. At the IRS Appeals conference petitioner affirmatively contended that she was a real estate professional; indeed, she convinced the AO that the IRS had litigation hazards on this point. We agree with respondent that the erroneous items were attributable to petitioner and that denial of relief under section 6015(b) was "substantially justified."

Section 6015(c) provides proportional relief in specified circumstances to a requesting spouse who is no longer married to (or is legally separated from) the nonrequesting spouse. See sec. 6015(d)(3); Cheshire v. Commissioner, 115 T.C. 183, 194 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002). Since all of the erroneous items in this case arose from petitioner's rental real estate activities, the AO reasonably concluded that 100% of those items would be allocated to her if she had filed separately. See sec. 6015(d)(3). By definition, therefore, no "proportional relief" would be available under subsection (c).

A taxpayer who does not qualify for relief under subsection (b) or (c) may seek equitable relief under subsection (f), which permits relief from joint and sev-

**[\*12]** eral liability if it would be inequitable to hold the requesting spouse liable for the deficiency on the basis of all the facts and circumstances. The IRS considers a nonexclusive list of factors to determine whether relief under section 6015(f) is warranted: (1) marital status; (2) economic hardship; (3) knowledge or reason to know; (4) legal obligation; (5) significant benefit; (6) compliance with income tax laws; and (7) mental or physical health. Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400. The IRS also considers whether the requesting spouse was abused before the return was filed. Id. sec. 4.03(2)(c)(iv), 2013-43 I.R.B. at 402.

The AO addressed these seven factors in a lengthy memorandum and concluded that only one factor (marital status) weighed in favor of relief. He found that petitioner's actual knowledge of the erroneous items weighed against relief; that she had failed to submit persuasive evidence of economic hardship or poor health; and that the other factors were neutral or weighed against relief. He concluded that petitioner was both the perpetrator and the victim of spousal abuse but that any abuse she suffered had no impact on how the 2009 joint return was prepared or filed.

In challenging the reasonableness of the AO's determination petitioner relies heavily on her charge of spousal abuse. Generally, abuse is a relevant factor where it "undermines the requesting spouse's ability to reason independently and

[*13] be able to do what is required under the tax laws." Id. This may be true where the requesting spouse "was not able to challenge the treatment of any items on the return, or was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation." Id. sec. 4.01(7)(d), 2013-43 I.R.B. at 400.

The AO reasonably concluded that petitioner could not make this kind of showing. Petitioner and Mr. Stackpool had permanently separated in August 2010, three months before the 2009 joint return was filed in November of that year. She was directly and actively involved in the preparation of that return, as evidenced by her extensive communications with the Hulet firm.

Although respondent initially adhered to the AO's position that petitioner was entitled to no relief, he ultimately agreed to concede the case, stipulating that petitioner would receive relief from joint and several liability under section 6015(f) with respect to the $8,512 balance of the 2009 assessed deficiency. There is no evidence in the record as to the basis for this concession. Although this concession is "a factor that may be considered," a concession "does not by itself establish that the position taken is unreasonable." Maggie Mgmt. Co., 108 T.C. at 443; see Swanson, 106 T.C. at 94 (holding that IRS position was substantially justified even though "[the Commissioner] ultimately conceded th[e] matter in

**[\*14]** \* \* \* [the taxpayers'] favor prior to trial"); Shaw v. Commissioner, T.C. Memo. 2005-106, 89 T.C.M. (CCH) 1244, 1246-1248 (denying motion for costs where the Commissioner made a full concession before trial).

Notwithstanding this concession, we conclude that the AO's determination that petitioner was entitled to no relief under section 6015(f) had a "reasonable basis both in law and fact" and was "justified to a degree that could satisfy a reasonable person." Swanson, 106 T.C. at 86 (quoting Underwood, 487 U.S. at 565); Rosario v. Commissioner, T.C. Memo. 2002-247, 84 T.C.M. (CCH) 392, 393; Lozon v. Commissioner, T.C. Memo. 1997-537, 74 T.C.M. (CCH) 1315, 1316. We accordingly conclude that the position of the United States was "substantially justified" under section 7430(c)(4)(B)(i). Because petitioner was not a "prevailing party," she is not entitled to an award of fees or costs. See sec. 7430(a), (c)(4).

B. Reasonableness of Petitioner's Costs

Even if we were to conclude that petitioner was a "prevailing party," she has not proven the dollar amount of professional fees that she incurred in pursuing her claim for innocent spouse relief. The taxpayer has the burden of establishing the fees incurred and of proving that the amount claimed is reasonable. Rule 232(e); see Cowie v. Commissioner, T.C. Memo. 2007-108. Absent agreement on the

[*15] amount that is reasonable, the moving party is required to file, within 30 days after receiving the IRS response to the motion for fees and costs, a detailed affidavit setting forth (among other things) a summary of the time expended by each individual for whom fees are sought, including a description of the work performed and the costs associated with this work.  Rule 232(d); see Malowney v. Commissioner, T.C. Memo. 2006-135.

Petitioner did not submit the affidavit required by Rule 232(d).  Instead, she relies on the declaration included with her original motion, which sought $24,714 for professional fees and $70 for Tax Court filing costs and postage.  She claims to have paid $16,475 in fees to a Denver attorney and $8,329 to a Denver accounting firm.[4]

Petitioner prepared her petition herself and appeared pro se in this Court. Apart from her Tax Court filing costs, therefore, she incurred no "litigation costs." The attorney's fees covered work performed between March and November 2014 in connection with her protest to the IRS Appeals Office.  There is no reference in the attorney's invoices to "innocent spouse" or section 6015 relief.  Rather, the time entries refer specifically to other aspects of the 2009-2011 examination (e.g., responding to document requests, pursuing a Freedom of Information Act request,

---

[4]Petitioner does not explain why these fees do not total $24,714.

**[\*16]** research concerning "real estate professional classification," and preparation of "real estate professional narratives" for 2010 and 2011). Other time entries refer generally to the Appeals Office protest (e.g., assembling documents and preparing for and attending the conference). Petitioner has not established what (if any) attorney's fees were incurred in connection with the "innocent spouse" issue that is the sole subject of this case.

Petitioner's accountant's fees covered work performed between May 2013 and March 2015. There is no reference in the accountant's time entries to "innocent spouse" or section 6015 relief. A few entries refer generally to the 2009-2011 protest without describing the exact work performed. But much of the time was spent on return preparation (e.g., "assembling tax return," "return review," "review data for amended return," "completion of 2012 amended return," and review of "mileage and vehicle expenses on amended 2012 tax return"). As in the case of her attorney's fees, petitioner has not established what (if any) accountant's fees she incurred in connection with the "innocent spouse" issue for 2009.[5]

---

[5]All of the attorney's time was billed at $265 per hour, and most of the accounting time was billed at $260 per hour. For fees incurred in calendar year 2015, the fee award limitation under section 7430 was $200 per hour. See Rev. Proc. 2014-61, 2014-47 I.R.B. 860. For fees incurred in calendar years 2013 and 2014, the fee award limitation under section 7430 was $190 per hour. See Rev. Proc. 2013-35, 2013-47 I.R.B. 537; Rev. Proc. 2012-41, 2012-45 I.R.B. 539.

(continued...)

**[\*17]** Respondent noted these defects in his response to petitioner's motion for fees and costs. Invoking Rule 232(d), respondent urged that petitioner was required to file "an additional affidavit or declaration" establishing the time that her professionals devoted to the "innocent spouse" issue for 2009. She filed with her reply no such declaration, and she did not address any of the defects to which respondent pointed.

Instead, petitioner noted in her reply that she is an attorney and asserted that: (1) her billing rate is $350 an hour; (2) she had devoted 1,000 hours during the previous four years to resolution of her 2009-2011 tax liabilities; and (3) she was therefore entitled to additional attorney's fees of $350,000. This contention is frivolous. The plain language of section 7430 allows reimbursement only for actual expenditures, not for lost opportunity costs. See, e.g., Minahan, 88 T.C. at 519 (citing Frisch v. Commissioner, 87 T.C. 838, 845-847 (1986)). The time petitioner expended as a pro se litigant gives rise to no "actual expenditure" within the meaning of section 7430. Frisch, 87 T.C. at 845-847; see also Dixon v. Com-

---

⁵(...continued)
Petitioner has the burden of showing that a "special factor" justified a higher hourly rate. See sec. 7430(c)(1)(B)(iii); sec. 301.7430-4(b)(3)(iii), Proced. & Admin. Regs. She made no effort to do this.

[*18] missioner, 132 T.C. 55, 75 (2009) ("Attorneys' fees cannot exist, and therefore cannot be incurred, unless there is an attorney-client relationship.").

In sum, even if petitioner were a "prevailing party" under section 7430(a), she incurred no costs for professional assistance during the litigation phase of this case. And she has not carried her burden of proving the amount of "reasonable administrative costs" allocable to the innocent spouse issue for 2009, as opposed to the numerous other issues that were the subject of the 2009-2011 IRS examination and her Appeals Office protest. The only sum that she has established as attributable to her claim for innocent spouse relief is the $70 she paid for the Tax Court filing fee and postage. But because we have determined that she is not a "prevailing party," she is entitled to no fees or costs at all.

To implement the foregoing,

An appropriate order and decision will be entered.