T.C. Memo. 2016-141

UNITED STATES TAX COURT

PAMELA HARDIN, Petitioner, AND ROBERT H. LATTINVILLE, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 648-14.　　　　　　　　　Filed July 26, 2016.

Harry Charles, for petitioner.

Ben W. Hobert and Jon A. Santangelo, for intervenor.

Karen O. Myrick, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:　Respondent determined the following deficiencies in,
and accuracy-related penalties under section 6662(a)[1] on, petitioner's Federal
income tax (tax):

---

[1] All section references are to the Internal Revenue Code in effect at all
relevant times.　All Rule references are to the Tax Court Rules of Practice and
Procedure.

[*2]

| Year | Deficiency | Accuracy-Related Penalty Under Sec. 6662(a) |
|------|-----------|---------------------------------------------|
| 2009 | $75,514.48 | $14,813.24 |
| 2010 | 111,061.31 | 22,448.00 |

The issues remaining for decision are whether petitioner is entitled to relief under section 6015(f) and whether the Court should impose a penalty on petitioner under section 6673(a)(1) and sanction her attorney of record under section 6673(a)(2). The Court holds that petitioner is not entitled to relief under section 6015(f). The Court further holds that it will not at this time impose a penalty on petitioner under section 6673(a)(1) or sanction her attorney of record under section 6673(a)(2).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Pamela Hardin (petitioner) resided in Missouri at the time she filed the petition.

At times not established by the record, petitioner was awarded an undergraduate degree in finance and international management and a master's degree in business administration. At all relevant times, including during 2009 and 2010,

**[*3]** the taxable years at issue, petitioner was licensed as a certified financial planner.

From a time not established by the record to September 2003, petitioner worked in Missouri for Moneta Group, a registered investment advisor.  At a time not established by the record before 2003, one of petitioner's clients at Moneta Group referred her to Robert Thoma (Mr. Thoma), whom she retained as her tax return preparer.  During the years in which petitioner retained Mr. Thoma, they sometimes referred clients to one another.

Petitioner met Robert H. Lattinville (intervenor) in 1997.  In 2002, she began to date him seriously.  They married on May 15, 2004, and were still married during 2009 and 2010.

During 2009 and 2010, intervenor was a partner in the law firm of Stinson Morrison Hecker, LLP.  During those years, he also owned a sports management business that he operated as a sole proprietorship.  Intervenor discontinued his sports management business in 2014.

Petitioner has two daughters from a previous marriage who, except while they were attending college, resided with her and intervenor during 2009 and 2010.  During those years, petitioner received from her former husband and the

**[*4]** father of those daughters monthly child support of $403.25 for them, who as of January 1, 2009, were ages 20 and 18.

Petitioner and intervenor have one daughter from their marriage who was seven years old as of November 16, 2011, and who also resided with them during 2009 and 2010.

At all relevant times, petitioner and intervenor generally maintained separate bank accounts. During 2009 and 2010, petitioner maintained various bank accounts, some of which were business bank accounts. During 2009 and 2010, petitioner and intervenor maintained a joint account into which intervenor deposited between $7,000 and $7,500 each month. During those years, he also paid directly certain household expenses, including expenses, as incurred, in renovating the residence in which they lived.

Sometime in 2003, petitioner, who at the time had 20 years of experience in the investment industry, created and became president of a financial planning company known as Foundation Wealth Management, LLC (FWM). FWM is a registered investment advisor that files reports with the Securities and Exchange Commission and that petitioner has been operating as a sole proprietorship since she created it. Intervenor was not involved in the creation or the operation of

[*5] FWM.  Petitioner retained Mr. Thoma in fall 2003 to establish an accounting system for FWM.

As president of FWM, petitioner was responsible for FWM's providing comprehensive personal financial planning, which included giving advice on matters involving cashflow, retirement, tax and estate planning, and investment management.  Between 2005 and 2012, the average value of the assets that petitioner managed as president of FWM increased from $78 million to $150 million.  In 2014, the average value of the assets that she managed as president of FWM was $232.3 million.  As of November 2011, petitioner had averaged a client retention rate throughout the previous eight years of 99 percent.

During the period 2009 through 2014, petitioner retained Shaundra Huebner (Ms. Huebner) to assist her in operating FWM.  Ms. Huebner assisted petitioner in various ways, including in maintaining books and records for FWM's business operations.  Ms. Huebner also gathered certain personal information and information relating to FWM for use in the preparation of petitioner's tax return for, inter alia, each of the taxable years 2009 and 2010.  Ms. Huebner gave the information that she had gathered for use in preparing each of those returns to Mr. Thoma.

Petitioner maintained several separate bank accounts for FWM (FWM's bank accounts).  Petitioner was the authorized signatory over, and received the

[*6] bank statements for, FWM's bank accounts. Intervenor did not have signatory authority over, and did not receive the bank statements for, FWM's bank accounts. Nor did he receive any other financial information relating to FWM.

Petitioner and intervenor filed jointly Forms 1040, U.S. Individual Income Tax Return (return), for the taxable years 2009 (2009 joint return) and 2010 (2010 joint return). (The Court shall sometimes refer collectively to the 2009 joint return and the 2010 joint return as the joint returns in question.)

Petitioner and intervenor retained Mr. Thoma to prepare the joint returns in question. While he was preparing each of those returns, Mr. Thoma met on one occasion with both petitioner and intervenor and met on other occasions separately with petitioner and with intervenor. Petitioner, or Ms. Huebner on her behalf, provided Mr. Thoma with information relating to FWM for use in his preparation of Schedule C, Profit or Loss From Business (Schedule C), for that business for each of the taxable years 2009 (2009 FWM Schedule C) and 2010 (2010 FWM Schedule C). Intervenor provided Mr. Thoma with information relating to his interest in the law firm in which he was a partner for use in his preparation of Schedule C for that partnership interest for each of the taxable years 2009 (2009 law firm Schedule C) and 2010 (2010 law firm Schedule C). Intervenor also gave Mr. Thoma information relating to intervenor's sports management business for use in his

**[*7]** preparation of Schedule C for that business for each of the taxable years 2009 and 2010.

Before Mr. Thoma had each of the joint returns in question filed electronically, he provided petitioner with a copy of the joint return that was to be filed.[2] Petitioner did not review the copy of the 2009 joint return or the copy of the 2010 joint return that Mr. Thoma provided to her. Instead, after Mr. Thoma provided her a copy of each of the joint returns in question, she immediately placed it in a file in her office.

Each of petitioner and intervenor authorized Mr. Thoma to file electronically each of the joint returns in question. Neither petitioner nor intervenor reviewed each of the joint returns in question before each of them was filed.

Petitioner and intervenor included Schedule A, Itemized Deductions (Schedule A), with each of their 2009 joint return (2009 Schedule A) and their 2010 joint return (2010 Schedule A). In the 2009 Schedule A and the 2010 Schedule A, they claimed, inter alia, "Home mortgage interest and points" of $67,395 and $41,966, respectively.

---

[2]Although the record establishes that Mr. Thoma provided petitioner with a copy of each of the 2009 joint return and the 2010 joint return that was to be filed either by visiting her office and giving her a paper copy or by emailing a copy to her, the record does not establish which of those two methods Mr. Thomas used to do so.

[*8]  Petitioner and intervenor included the 2009 FWM Schedule C with their 2009 joint return and the 2010 FWM Schedule C with their 2010 joint return.  In their 2009 FWM Schedule C, petitioner and intervenor showed "Gross receipts or sales" of $632,657 and claimed, inter alia, "Other expenses" of $330,495.  Those "Other expenses" included, inter alia, "software upgrades" of $28,740, "employee health/fitness" of $3,144, "continuing ed & cert upgrade" of $24,240, and "shared commissions" of $175,810.  In their 2010 FWM Schedule C, petitioner and intervenor showed "Gross receipts or sales" of $725,693, and claimed, inter alia, mortgage interest of $20,983 and "Other expenses" of $390,494.  Those "Other expenses" included, inter alia, "continuing education" of $21,100 and "shared fees/co-op broker" of $260,169.

Petitioner and intervenor also included the 2009 law firm Schedule C with their 2009 joint return and the 2010 law firm Schedule C with their 2010 joint return.  In the 2010 law firm Schedule C, they claimed, inter alia, "Other expenses" of $51,786.  Those "Other expenses" included, inter alia, "Pen Contr included in K-1 inc" of $32,500.

Around January 10, 2011, petitioner and intervenor separated.  On November 16, 2011, they were divorced pursuant to a judgment of dissolution of marriage (divorce judgment) that the Circuit Court of St. Louis County, Missouri,

[*9] entered. The divorce judgment incorporated a marital settlement and separation agreement between petitioner and intervenor (separation agreement), which provided the following with respect to the division of the business interests of petitioner and intervenor:

> 4.8 Business/Partnership Interests:
>
> a. Husband owns a partnership interest [in] Stinson Morrison Hecker, LLP. Husband shall be awarded all of his right, title and interest in and to Stinson Morrison Hecker, LLP, including Husband's capital account.
>
> b. Wife owns a membership interest in Foundation Wealth Management, LLC. Wife shall be awarded all of her right, title and interest in and to Foundation Wealth Management, LLC, including all assets and liabilities thereof, and specifically including the Private Bank loan on which Foundation Wealth Management is the obligor.
>
> c. Each party shall warrant and defend, and indemnify and hold the other harmless from any and all obligations, financial liability, indebtedness, claims or charges associated with his or her awarded ownership or interest in the aforementioned entities, including the cost of a reasonable defense (attorney's fees, litigation expenses and court costs) arising therefrom.

Around September 2011, respondent initiated an examination of the joint returns in question. Mr. Thoma represented petitioner and intervenor during that examination.

On August 29, 2012, respondent sent to Mr. Thoma Form 4549, Income Tax Examination Changes (Form 4549), in which respondent proposed certain deter-

[*10] minations with respect to the joint returns in question (2009 and 2010 Form 4549). Respondent included with the 2009 and 2010 Form 4549 a workpaper explaining those proposed determinations. (The Court shall refer collectively to the 2009 and 2010 Form 4549 and the workpaper included with that form as respondent's proposed determinations).

In respondent's proposed determinations, respondent proposed to disallow, inter alia, the respective expenses for "shared commissions" and "shared fees/co-op broker" that petitioner and intervenor had claimed as part of "Other expenses" in the 2009 FWM Schedule C and the 2010 FWM Schedule C, respectively. In respondent's determinations, respondent also proposed to disallow, inter alia, "Pen Contr included in K-1 inc" of $32,500 that petitioner and intervenor had claimed as part of "Other expenses" in the 2010 law firm Schedule C. On August 31, 2012, Mr. Thoma sent a copy of respondent's proposed determinations to each of petitioner and intervenor.

On September 12, 2012, intervenor submitted to respondent completed Form 8857, Request for Innocent Spouse Relief (Form 8857), with respect to the taxable years 2009 and 2010 (intervenor's Form 8857). In that form, intervenor indicated that he did not know that there was anything incorrect or missing in the joint returns in question. He then stated in pertinent part in intervenor's Form

**[*11]** 8857: "I did not have any knowledge regarding the financial status of my wife's [petitioner's] business [FWM], except that she seemed successful in it."

On October 24, 2012, petitioner submitted to respondent completed Form 8857 with respect to the taxable years 2009 and 2010 (petitioner's Form 8857). In a cover letter attached to petitioner's Form 8857, petitioner stated in pertinent part:

> Attached please find my Form 8857 and attachments. In short, I am every bit as "innocent" as my ex-husband in that we both relied on the expertise of our tax preparer. Our returns were not completed until the last minute. We trusted that they were prepared accurately. We paid the tax as determined on those returns. Our joint, married household in 2009 and 2010 benefitted from the temporary, erroneous tax relief.

In petitioner's Form 8857, she did not check "yes" or "no" in response to a question asking whether she was the victim of spousal abuse or domestic violence during 2009 or 2010. In that form, she indicated that she did not know that there was anything incorrect in the joint returns in question because she relied on Mr. Thoma's expertise. In petitioner's Form 8857, petitioner stated in pertinent part: "It would be unfair to hold me solely (or in the majority) liable for the tax. My ex-husband and I are equally innocent in relying on our tax preparer." In an addendum to petitioner's Form 8857, petitioner stated in pertinent part:

> In February or March of each year, Bob Lattinville [intervenor] and I would meet with Mr. Thoma at his office in Columbia, IL. We would drop off any tax documents we had received. My ex-husband did not

[*12] typically have his K-1 from his law firm until after those meetings. The K-1 usually arrived very close to April 15. The tax preparer would then prepare our joint return. Mr. Thoma would send us the e-filing form for signature and coupons for amounts owed as well as quarterly estimates for the coming year. My ex-husband and I did not review the returns; we simply relied on our preparer, assumed he had prepared the returns accurately and sent in our money.

On October 26, 2012, petitioner submitted to respondent completed Form 12508, Questionnaire for Non-Requesting Spouse (Form 12508). In petitioner's Form 12508, petitioner stated that she and intervenor "each had separate accounts used for our separate businesses." In an addendum to petitioner's Form 12508, petitioner stated in pertinent part:

> 9. The changed items primarily relate to Ms. Hardin's [petitioner's] business. As explained herein, Mr. Thoma either negligently or fraudulently took substantial deductions for fees in 2009 and fees share with coop broker in 2010. Ms. Hardin does not know whether Mr. Lattinville [intervenor] reviewed the returns at issue before signing them, but does not believe that either she or Mr. Lattinville actually received the returns until after they were filed. * * *

On November 13, 2012, intervenor submitted to respondent completed Form 12508. In intervenor's Form 12508, intervenor stated in pertinent part:

> My ex-wife (the "Individual") [petitioner] and I each maintained our own tax records. Throughout the year the Individual would meet with our tax preparer, Mr. Thoma. Then, in or about February of the year following the tax year for which returns were being prepared, the Individual and I would meet with Mr. Thoma and deliver documentation for the preparation of your [sic] tax returns. At that meeting, there were typically a few documents that we had not received that

**[\*13]** were necessary to complete our returns.  After we received those documents in late February and early March we would schedule another meeting with Mr. Thoma and delver [sic] the remaining documents.  Then, Mr. Thoma would prepare our taxes and send the returns and an electronic filing document for our signature.

I reviewed the tax returns to confirm the accuracy of the documents I provided Mr. Thoma and the taxable income attributable to my partnership interest.  I did not review any underlying document or item pertaining to the Individual's business and its taxable income.

At a time not established by the record, respondent made an initial determination (initial section 6015(c) determination) that each of petitioner and intervenor is entitled to relief under section 6015(c).  In that initial determination, respondent concluded that intervenor is entitled to relief under section 6015(c) with respect to, inter alia, (1) the portion of the proposed deficiency for the taxable year 2009 that was attributable to the disallowance of the expenses for "shared commissions" claimed in the 2009 FWM Schedule C and (2) the portion of the proposed deficiency for the taxable year 2010 that was attributable to the disallowance of the expenses for "shared fees/co-op broker" claimed in the 2010 FWM Schedule C. In the initial section 6015(c) determination, respondent further concluded that petitioner is entitled to relief under section 6015(c) with respect to the portion of the deficiency for the taxable year 2010 that was attributable to the disallowance

[*14] of the expenses for "Pen Contr included in K-1 inc" claimed in the 2010 law firm Schedule C.

On January 29, 2013, petitioner's representative, who is also the attorney of record in this case, sent to respondent a letter (petitioner's appeal) in which she appealed the initial determination that intervenor is entitled to relief under section 6015(c). At a time not established by the record, respondent assigned petitioner's appeal to an Appeals officer in respondent's Appeals Office.

On May 7, 2013, petitioner's representative sent to the Appeals officer a letter in support of her appeal. In that letter, petitioner's representative argued that intervenor should have been denied relief under section 6015(c) because he had actual knowledge that the expenses for "shared commissions" and "shared fees/co-op broker" in the respective 2009 FWM Schedule C and the 2010 FWM Schedule C were erroneous.

On June 19, 2013, intervenor sent to the Appeals officer a letter in which he opposed petitioner's appeal. In that letter, intervenor argued that respondent had properly granted intervenor relief under section 6015(c) because intervenor was not involved in the operation of FWM and had no actual knowledge of any erroneous expenses that that organization had claimed in the 2009 FWM Schedule C and the 2010 FWM Schedule C, respectively.

**[\*15]** At a time not established by the record, the Appeals officer affirmed the initial section 6015(c) determination that each of petitioner and intervenor is entitled to certain relief under section 6015(c).

On November 19, 2013, respondent issued to petitioner a notice of deficiency for the taxable years 2009 and 2010 (notice). In the notice, respondent determined, inter alia, to (1) decrease by $9,610 the "Home mortgage interest and points" claimed in the 2009 Schedule A, (2) decrease by $10,407.23 the "Gross receipts or sales" showed in the 2009 FWM Schedule C, and (3) disallow the following "Other expenses" claimed in the 2009 FWM Schedule C: "software upgrades" of $16,215, "employee health/fitness" of $3,144, "continuing ed & cert upgrade" of $24,240, and "shared commissions" of $175,810. In the notice, respondent further determined, inter alia, to (1) increase by $7,736 the "home mortgage interest and points" claimed in the 2010 Schedule A, (2) disallow "Pen Contr included in K-1 inc" of $32,500 claimed as an "Other expenses" in the 2010 law firm Schedule C, (3) increase by $17,953.35 the "Gross receipts or sales" showed in the 2010 FWM Schedule C, (4) disallow mortgage interest of $20,983 claimed in the 2010 FWM Schedule C, and (5) disallow the following "Other expenses" claimed in the 2010 FWM Schedule C: "continuing education" of $21,100 and "shared fees/co-op broker" of $260,169. In the notice, respondent

[*16] further determined that petitioner is liable for the taxable years 2009 and 2010 for an accuracy-related penalty under section 6662(a).

In a so-called understatement allocation worksheet that respondent included with the notice (allocation worksheet), respondent indicated that intervenor is entitled to relief under section 6015(c) with respect to (1) the portion of the deficiency for the taxable year 2009 that was attributable to respondent's proposed determinations with respect to the 2009 FWM Schedule C and (2) the portion of the deficiency for the taxable year 2010 that was attributable to respondent's proposed determinations with respect to the 2010 FWM Schedule C. In that work-sheet, respondent further indicated that petitioner is entitled to relief under section 6015(c) with respect to the portion of the deficiency for the taxable year 2010 that was attributable to respondent's proposed determination with respect to the 2010 law firm Schedule C.[3]

In the notice, respondent set forth the following with respect to the respective claims under section 6015 that petitioner and intervenor had made:

> Mr. Lattinville [intervenor] * * * requested Innocent Spouse relief under IRC 6015(b), IRC 6015(c) or IRC 6015(f) for the tax years ending December 31, 2009 and December 31, 2010. Relief has been

---

[3]Respondent made no determination in the notice with respect to the 2009 law firm Schedule C.

**[\*17]** granted.  Mr. Lattinville is individually liable for $11,872.21 plus interest.  See attached allocation worksheet.

Ms. Hardin [petitioner] * * * requested Innocent Spouse relief under IRC 6015(b), IRC 6015(c) or IRC 6015(f) for the tax years ending December 31, 2009 and December 31, 2010.  Relief has been granted.  Ms. Hardin is individually liable for $186,575.79 plus penalties and interest.  See attached allocation worksheet.

On November 19, 2012, during respondent's examination of the years at issue, petitioner filed a return for the 2011 taxable year (2011 return).  In Form 4549 dated May 28, 2013, respondent proposed certain determinations with respect to petitioner's 2011 return.  Those proposed determinations included (1) an adjustment that increased petitioner's taxable income from $133,246 to $251,915 and that was entirely attributable to determinations that respondent had proposed relating to the Schedule C for FWM that petitioner had included with her 2011 return and (2) an accuracy-related penalty under section 6662(a) of $17,376.20.

On January 13, 2014, petitioner filed a petition with the Court in which she argued that respondent had erred in granting intervenor relief under section 6015(c).

On August 4, 2014, respondent filed a motion for summary judgment.  In that motion, respondent asked the Court to hold that it does not have jurisdiction over this case.  In that motion, respondent indicated that petitioner's attorney of

[*18] record had represented to counsel for respondent that petitioner is not disputing the determinations in the notice. Instead, her only dispute is whether respondent should have granted relief to intervenor under section 6015(c). Respondent argues in respondent's motion for summary judgment that the Court does not have jurisdiction under section 6015 to resolve the only dispute that petitioner's attorney of record represented remains in this case.

On September 11, 2014, the Court held a telephonic conference (September 11, 2014 telephonic conference) with petitioner's counsel, intervenor's counsel, and respondent's counsel. During that telephonic conference, the Court advised respective counsel for the parties that it does not have jurisdiction to address petitioner's allegation in the petition that respondent erred in granting relief to intervenor under section 6015(c). The Court further informed respective counsel for the parties during the September 11, 2014 telephonic conference that it would deny respondent's motion for summary judgment without prejudice and entertain a motion by petitioner for leave to file an amendment to petition or an amended petition.

By order dated September 12, 2014, the Court denied respondent's motion for summary judgment without prejudice.

[*19] On September 22, 2014, petitioner filed a motion for leave to file amended petition and lodged an amended petition. On October 15, 2014, the Court granted that motion and had petitioner's amended petition filed as of that date. In that amended petition, petitioner alleged that she is entitled to relief under section 6015(f) for each of the taxable years 2009 and 2010 because she was abused by intervenor and was not able to challenge the treatment of any items in the joint returns in question for fear of intervenor's retaliation. On October 23, 2014, respondent filed an answer to the amended petition. In that answer, respondent denied the allegations in the amended petition in support of petitioner's claim to relief under section 6015(f).

OPINION

Section 6013(a) provides that married taxpayers may elect to file jointly a tax return. If a joint tax return is filed, the spouses are jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, a spouse may be relieved of joint and several liability in one of three ways. See sec. 6015(b), (c), (f).

Although respondent granted petitioner relief under section 6015(c) with respect to the portion of the deficiency for the taxable year 2010 that was attributable to respondent's determination to disallow certain expenses claimed in the

[*20] 2010 law firm Schedule C,[4] she maintains that she is also entitled to relief under section 6015(f) with respect to (1) the portion of the deficiency for the taxable year 2009 that is attributable to the expenses for "shared commissions" in the 2009 FWM Schedule C that respondent disallowed and (2) the portion of the deficiency for the taxable year 2010 that is attributable to the expenses for "shared fees/co-op broker" in the 2010 FWM Schedule C that respondent disallowed.[5] (The Court shall refer to the expenses for "shared commissions" and "shared fees/co-op broker" claimed in the 2009 FWM Schedule C and the 2010 FWM Schedule C, respectively, that respondent disallowed as the erroneous items in question.) Respondent and intervenor disagree.

Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); Porter v. Commissioner, 132 T.C. 203, 210 (2009).

---

[4]Respondent made no determination in the notice with respect to the 2009 law firm Schedule C.

[5]In the notice, respondent made certain other determinations with respect to the 2009 FWM Schedule C, the 2010 FWM Schedule C, the 2009 Schedule A, and the 2010 Schedule A. As the Court understands petitioner's position, she is claiming relief under sec. 6015(f) only with respect to the respective portions of the deficiencies for the taxable years 2009 and 2010 that are set forth in the text.

**[\*21]** Section 6015(f) provides:

> SEC. 6015.    RELIEF FROM JOINT AND SEVERAL LIABILITY
> ON JOINT RETURN.
>
>      (f) Equitable Relief.--Under procedures prescribed by the
> Secretary, if--
>
>           (1) taking into account all the facts and circumstances, it is
>      inequitable to hold the individual liable for any unpaid tax or
>      any deficiency (or any portion of either); and
>
>           (2) relief is not available to such individual under subsec-
>      tion (b) or (c), the Secretary may relieve such individual of
>      such liability.

Petitioner and respondent agree, and intervenor does not dispute, that the

relief that petitioner seeks is not available to her under section 6015(b) or (c),

thereby satisfying section 6015(f)(2).  They disagree over whether petitioner is

entitled to relief under section 6015(f).

As directed by section 6015(f), the Commissioner of Internal Revenue has

prescribed procedures that are applicable for the years at issue and that are

generally to be used in determining whether it would be inequitable to find the

requesting spouse liable for part or all of the deficiency in question.[6]  See Rev.

---

[6]The Court is not bound by revenue procedures.  However, we often look to
them for guidance, especially when we are presented with whether a requesting
spouse is entitled to relief under sec. 6015(f).  See, e.g., Hollimon v. Commis-
sioner, T.C. Memo. 2015-157, at \*7-\*8.

**[*22]** Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403. Those procedures include seven threshold conditions (threshold conditions) that must be satisfied in order for the requesting spouse to be eligible for equitable relief under section 6015(f). See id. sec. 4.01, 2013-43 I.R.B. at 399-400.

Respondent concedes, and intervenor does not dispute, that the first five threshold conditions are satisfied.[7] The parties disagree about whether the sixth[8] and seventh threshold conditions are satisfied. The Court considers only the seventh threshold condition. That is because the Court's resolution of whether petitioner satisfies the seventh threshold condition resolves whether she is entitled to relief under section 6015(f).

As pertinent here, the seventh threshold condition in Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400, is:

---

[7]The first five threshold conditions are: (1) the requesting spouse filed a joint return for the taxable year with respect to which he or she seeks relief; (2) relief is not available under sec. 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; and (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse. See Rev. Proc. 2013-34, sec. 4.01(1)-(5), 2013-43 I.R.B. 397, 399.

[8]The sixth threshold condition is that the requesting spouse did not knowingly participate in the filing of a fraudulent joint return. See Rev. Proc. 2013-34, sec 4.01(6), 2013-43 I.R.B. at 399.

[*23] (7) The income tax liability from which the requesting spouse seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the non-requesting spouse's income.  If the liability is partially attributable to the requesting spouse, then relief can only be considered for the portion of the liability attributable to the nonrequesting spouse.  Nonetheless, the Service will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attribut-able (in full or in part) to the requesting spouse if any of the following exceptions applies:

*       *       *       *       *       *       *

(d) <u>Abuse</u>.  If the requesting spouse establishes that he or she was the victim of abuse prior to the time the return was filed, and that, as a result of the prior abuse, the requesting spouse was not able to challenge the treatment of any items on the return, or was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation, the Service will con-sider granting equitable relief even though the deficiency or under-payment may be attributable in part or in full to an item of the re-questing spouse.

As the Court understands petitioner's position, she maintains that she satisfies the seventh threshold condition in Rev. Proc. 2013-34, sec. 4.01(7), and is entitled to relief under section 6015(f) for the respective portions of the deficien-cies for the taxable years 2009 and 2010 that are attributable to the erroneous items in question.  That is because, petitioner contends, she was abused by intervenor and, as a result of that alleged abuse, she was unable to challenge the erroneous items in question for fear of intervenor's retaliation.  Respondent

**[\*24]** "disputes that any alleged abuse prevented petitioner from challenging the returns in question."

In support of petitioner's contention that she was not able to challenge the erroneous items in question for fear of intervenor's retaliation, petitioner relies only on her own testimony.[9] The Court did not find petitioner to be credible. The Court found her testimony to be in certain material respects evasive, vague, conclusory, and/or inconsistent with certain other evidence in the record that the Court found to be credible. The Court shall not rely on the testimony of petitioner to establish her position in this case. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

The facts that the Court has found in this case belie petitioner's contentions that she was abused by intervenor and that, as a result of that alleged abuse, she was not able to challenge the erroneous items in question for fear of intervenor's retaliation. Suffice it to say here that it was petitioner, not intervenor, who operated and controlled FWM. In addition, it was petitioner who declined to review the 2009 joint return and the 2010 joint return before Mr. Thoma had those

---

[9]Petitioner relies on her own testimony and on the respective testimonies of certain other witnesses in order to establish her claim that intervenor abused her. At the conclusion of the trial in this case, the Court commented on the respective testimonies of those other witnesses, as well as the respective testimonies of petitioner and intervenor. The Court will not repeat those comments here.

[*25] returns filed electronically.  Moreover, around January 10, 2011, before the 2010 joint return was even prepared, let alone filed, petitioner and intervenor separated.

We believe that petitioner's contentions that she was abused by intervenor and that, as a result of that alleged abuse, she was not able to challenge the erroneous items in question for fear of intervenor's retaliation were an after-thought that occurred to petitioner after the Court had informed respective counsel for the parties during the September 11, 2014 telephonic conference that, as respondent maintained in respondent's motion for summary judgment, the Court does not have jurisdiction to consider whether respondent should have granted relief to intervenor under section 6015(c).  Indeed, at the time of that telephonic conference, petitioner had not claimed in the petition in this case that intervenor's alleged abuse prevented her from challenging the erroneous items in question for fear of intervenor's retaliation.  Nor had she made that claim in petitioner's Form 8857, in petitioner's Form 12508, or in petitioner's appeal during respondent's administrative proceedings to consider petitioner's claim to relief under section 6015.  The first time that petitioner claimed that intervenor's alleged abuse prevented her from challenging the erroneous items in question for fear of intervenor's retaliation was in the amended petition that the Court allowed her to

**[\*26]** file after the September 11, 2014 telephonic conference in which it had advised the parties' respective counsel, inter alia, that it would deny respondent's motion for summary judgment without prejudice.

On the record before the Court, the Court finds that petitioner has failed to carry her burden of establishing that, as a result of intervenor's alleged abuse, she was not able to challenge the treatment of the erroneous items in question for fear of intervenor's retaliation. On that record, the Court further finds that petitioner has failed to carry her burden of establishing that she satisfies the seventh threshold condition in Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400.[10]

Based upon the Court's examination of the entire record before the Court, the Court finds that petitioner has failed to carry her burden of establishing that

---

[10]Assuming arguendo that petitioner had carried her burden of establishing that all seven of the threshold conditions were satisfied, the Court would still find that the factors enumerated in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403, weigh against granting petitioner relief under sec. 6015(f). Specifically, on the record before the Court, the Court finds that petitioner would not suffer economic hardship if relief is not granted; petitioner had reason to know of the erroneous items in question that gave rise to the portions of the respective deficiencies for the taxable years 2009 and 2010 for which she is claiming relief under sec. 6015(f); pursuant to the separation agreement petitioner has a legal obligation to hold intervenor harmless from any and all obligations relating to her ownership of FWM, including tax obligations; petitioner benefited significantly from the respective understatements attributable to the erroneous items in question; and petitioner has failed to comply with the tax laws for at least one year after the taxable years at issue, namely, the taxable year 2011. See id.

**[*27]** she is entitled to relief under section 6015(f) with respect to the respective portions of the deficiencies for the taxable years 2009 and 2010 that are attributable to the erroneous items in question.

The Court considers now whether, as intervenor maintains, the Court should impose a penalty on petitioner under section 6673(a)(1) and sanction her attorney of record under section 6673(a)(2). Section 6673(a)(1) authorizes the Court to require a taxpayer to pay to the United States a penalty in an amount not to exceed $25,000 whenever it appears to the Court, inter alia, that a proceeding before it was instituted or maintained primarily for delay, sec. 6673(a)(1)(A), or that the taxpayer's position in such a proceeding is frivolous or groundless, sec. 6673(a)(1)(B). Section 6673(a)(2) authorizes the Court to require any attorney admitted to practice before the Court who has multiplied the proceedings in any case unreasonably and vexatiously to pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Court believes that petitioner instituted and maintained this case primarily for delay. The Court also believes that petitioner has advanced and maintained a position in this case that is groundless. Nonetheless, the Court shall not at this time impose a penalty under section 6673(a)(1) on petitioner. The Court cautions her that she may be subject to such a penalty if in the future she

**[*28]** institutes or maintains a proceeding in this Court primarily for delay and/or her position in any such proceeding is frivolous or groundless. See Abrams v. Com-missioner, 82 T.C. 403, 409-413 (1984); White v. Commissioner, 72 T.C. 1126, 1135-1136 (1979).

The Court believes that petitioner's attorney of record multiplied the proceedings in this case unreasonably and vexatiously. Nonetheless, the Court shall not sanction him at this time under section 6673(a)(2). The Court cautions him that he may be subject to such a sanction if in the future he multiplies the proceedings in any case before this Court unreasonably and vexatiously. See Nis Family Tr. v. Commissioner, 115 T.C. 523, 547-553 (2000).

The Court has considered all of the contentions and arguments of the parties that are not discussed herein, and the Court finds them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered for respondent.