T.C. Memo. 2019-139

UNITED STATES TAX COURT

LINDSEY JONES, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 32168-15.                              Filed October 16, 2019.

<u>Jonathan T. Amitrano</u> and <u>Alvah Lavar Taylor</u>, for petitioner.

<u>Mindy Meigs</u> and <u>Sherri G. Morris</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Petitioner filed the petition in this case in response to a so-called final appeals determination (notice of determination) denying her request for relief from joint and several liability under section 6015(f) for the 2009 and

[*2] 2010 taxable years (years at issue).[1]  We must decide whether petitioner is

entitled to relief under that section from underpayments of tax for those years.  We

hold that she is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.

[2]We note that at trial, in addition to receiving into evidence the stipulation
of facts (which did not delineate what constituted the administrative record at the
time of the notice of determination), the Court received (1) the testimonies of
petitioner, her ex-husband Noah Pike, and three additional witnesses for petitioner
without objection from respondent's counsel and (2) four additional exhibits
proffered by petitioner.  The trial took place and the record was closed before the
President signed into law the Taxpayer First Act (TFA), Pub. L. No. 116-25, 133
Stat. 981 (2019), on July 1, 2019.  TFA sec. 1203, 133 Stat. at 988, amended sec.
6015(e) by adding paragraph (7), which provides for the standard and scope of
Tax Court review.  Specifically, paragraph (7) provides that "[a]ny review of a
determination made under this section [sec. 6015] shall be reviewed de novo by
the Tax Court and shall be based upon--(A) the administrative record established
at the time of the determination, and (B) any additional newly discovered or
previously unavailable evidence."  According to TFA sec. 1203(b), this provision
applies "to petitions or requests filed or pending on or after the date of the
enactment of this Act."
        It would thus seem that the effective date provision calls on us to apply sec.
6015(e)(7) to cases tried before that section was enacted, which would include this
case.  Suffice it to say, however, sec. 6015(e)(7) would not change our ultimate
finding set forth below as to whether petitioner is entitled to relief under sec.
6015(f) from the underpayments of tax for the years at issue.  In other words, even
allowing petitioner to present her case to the fullest extent and considering all of
the evidence presented, we find that she is not entitled to sec. 6015(f) relief for the

(continued...)

**[*3]** The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in California when her petition was filed.

I.      Petitioner's Background

On October 13, 2002, petitioner married Noah Pike, and they were still married during the years at issue. They have one child. During 2009 petitioner primarily took care of their child but was also employed as a "W-2 wage earner" for Ebanista, Inc. (2009 W-2 employer), and claimed to be a student and have an interior design business. During 2010 petitioner continued to primarily take care of their child but was also employed as a "W-2 wage earner" for Restoration Hardware, Inc., and Gardenology, Inc. (2010 W-2 employers), and claimed to be a student. During the years at issue Mr. Pike worked as a manager in his family's restaurants.

On August 15, 2008, petitioner and Mr. Pike separated. When they separated, however, money was tight, and thus they remained in the marital home together, sleeping in separate bedrooms. They also knew that they would need to sell this home, which they did in October 2008 for a net gain of $70,000, and ultimately, they would need to use $30,000 of the net proceeds to satisfy their tax

[2](...continued)
years at issue.

**[*4]** liability for 2008. Upon their separation Mr. Pike began paying petitioner spousal support of $2,825 monthly.

In connection with their separation in August 2008 petitioner and Mr. Pike met with a mediator to discuss a marital settlement agreement (MSA) but did not sign an MSA at that meeting. They met with the mediator again in 2010, and on February 2, 2011, they executed an MSA.

The MSA did not make any reference to petitioner and Mr. Pike's not-yet-filed 2009 and 2010 joint returns or their then-future tax liabilities for the years at issue. However, the MSA did make reference to their tax liability for 2008; viz, in addressing the division of community property, the MSA indicated that petitioner and Mr. Pike had equally received the remaining net proceeds from the sale of their marital home after payment of $30,000 to the Internal Revenue Service (IRS) from these proceeds to satisfy their 2008 tax liability.

The MSA memorialized the fact that Mr. Pike had been paying petitioner spousal support of $2,825 monthly and provided that this spousal support obligation would continue until his or petitioner's death, petitioner's remarriage, further court order, or through September 30, 2011, whichever occurs first.

The MSA also included in pertinent part the following provisions:

**[\*5]** <span style="text-align:center">**DIVISION OF DEBTS**</span>

The parties agree that they have provided for the payment of all joint debts of which they are aware, and if any joint debts are discovered hereafter which are not provided for in this agreement, each party will pay one-half of such debt.

\*      \*      \*      \*      \*      \*      \*

**TAX REFUNDS OR DEFICIENCIES**

If at any time after the effective date of this agreement the parties shall be entitled to any tax refund on any federal or state income tax returns filed by the parties jointly, such refund shall be divided between them equally. Any deficiency assessed for any prior year in which the parties filed joint returns shall be payable in proportion to their income in the year assessed by each party as an individual obligation.

On March 16, 2011, petitioner commenced a proceeding in the Superior Court of California in Orange County, California (Orange County court), in which she sought a decree dissolving her marriage to Mr. Pike on the basis of irreconcilable differences. In connection with this proceeding petitioner and Mr. Pike completed and signed under penalties of perjury income and expense declarations. On their respective declarations, dated April 1, 2011, they indicated in the section titled "Tax Information" that they "last filed taxes" for 2008 and their filing status was married filing jointly.

**[\*6]** On May 6, 2011, the Orange County court issued a decree of dissolution of petitioner and Mr. Pike's marriage, effective September 27, 2011. This decree incorporated the MSA.

## II.    Petitioner's Tax Returns

For the years at issue and each year before that during their marriage, Mr. Pike had a tax return preparer prepare and file joint Federal income tax returns for himself and petitioner. Petitioner was never involved in their preparation or filing. Petitioner would provide her tax-related information to Mr. Pike, and he would mail his tax-related information, together with hers, to the tax return preparer each year. With respect to at least 2010, Mr. Pike signed petitioner's name on the return without her having reviewed it. Indeed, during their marriage Mr. Pike handled all of their family financial matters.

Petitioner's total reliance on Mr. Pike to handle family financial matters is consistent with her actions in this regard before and after their marriage. Before their marriage she was never involved in the preparation and filing of her Federal income tax returns; instead, she gave her tax-related information to her mother, and her mother prepared and filed her returns. Once she remarried in September 2012, petitioner relied on her second husband, Jeremiah Johnson, to handle the preparation and filing of their joint Federal income tax returns.

**[*7]** The IRS received petitioner and Mr. Pike's joint Federal income tax return for 2009 (2009 joint return) and joint Federal income tax return for 2010 (2010 joint return) after the dissolution of their marriage; the IRS received the 2009 joint return on October 25, 2012, and the 2010 joint return on November 23, 2012.

The 2009 joint return reported total income of $178,374, consisting of "[w]ages, salaries, tips, etc." of $60,309 (attributable in part to petitioner's wages from her 2009 W-2 employer), taxable interest of $12, business income of $121,053 (attributable to both petitioner's reported interior design business and Mr. Pike's reported "restaurant management" business), and a capital loss of $3,000. The 2009 joint return also reported three exemptions (one each for petitioner, Mr. Pike, and their child) and certain payments totaling $1,281 and claimed nonrefundable education credits of $512 and the standard deduction for married filing jointly status. Finally, the 2009 joint return reported a resulting Federal income tax liability of $39,848 (exclusive of penalties and interest).

The 2010 joint return reported total income of $184,642, consisting of "[w]ages, salaries, tips, etc." of $15,246 (i.e., petitioner's total wages from her 2010 W-2 employers), business income of $170,109 (solely attributable to Mr. Pike's reported "restaurant management" business), and a capital loss of $713. Like the 2009 joint return, the 2010 joint return reported three exemptions and

**[\*8]** certain payments, and claimed the standard deduction for married filing jointly status. Finally, the 2010 joint return reported a resulting Federal income tax liability of $49,003 (exclusive of penalties and interest).

The IRS received petitioner's Federal income tax return for 2011, reflecting her filing status as single and a tax refund of $651, and petitioner and Mr. Johnson's joint Federal income tax return for 2012 (2012 joint return), reflecting a Federal income tax liability of $819 (exclusive of penalties and interest), on June 19, 2014. Petitioner gave Mr. Johnson permission to sign the 2012 joint return on her behalf without having reviewed it.

The IRS received petitioner and Mr. Johnson's joint Federal income tax returns for 2013 and 2014, reflecting Federal income tax liabilities of $1,018 and $310, respectively (exclusive of penalties and interest), on June 8, 2015. The IRS received petitioner and Mr. Johnson's joint Federal income tax return for 2015, reflecting a tax refund of $4,159, on May 23, 2016.

III.    Petitioner's Request for Relief From Joint and Several Liability

On August 4, 2014, petitioner submitted Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint and several liability under section 6015(f) with respect to the years at issue. On that form petitioner did not check the boxes that would have indicated that (1) she or other members of her

[*9] family were a victim of spousal abuse or domestic violence (or suffering the effects of such abuse) during the years at issue or when the 2009 and 2010 joint returns were filed or (2) she had a mental or physical health problem either when those returns were filed or the form was filed.

On September 23, 2015, the IRS Office of Appeals in Covington, Kentucky, issued a notice of determination to petitioner denying her relief under section 6015(f) for the years at issue. According to the notice of determination, she was denied relief because "[t]he information we have available does not show you meet the requirements for relief" and "[y]ou did not show it would be unfair to hold you responsible."

Petitioner timely filed a petition with this Court seeking review of respondent's determination.

OPINION

I.    Introduction

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C.

**[\*10]** 276, 282 (2000). Nevertheless, under certain circumstances a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a). Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f). Respondent considered petitioner's entitlement to relief from joint and several liability only under subsection (f), and we have jurisdiction to do the same.[3] See sec. 6015(e)(1).

## II. Valid 2010 Joint Return

We first address whether petitioner and Mr. Pike made a valid joint Federal income tax return for 2010.[4] Petitioner asserts that not only did she not sign the 2010 joint return but she did not expressly consent to having Mr. Pike sign her name on and file that return. If the 2010 joint return is not a valid joint return, then she is not liable for the underpayment reflected thereon and the issue of whether she is entitled to relief under section 6015(f) for 2010 becomes moot. See

---

[3]Sec. 6015(b) and (c) do not apply in this case because there are neither understatements of tax nor deficiencies at issue, as required by sec. 6015(b) and (c), respectively; rather, only underpayments are at issue. See Durham v. Commissioner, T.C. Memo. 2004-184, slip op. at 6.

[4]Petitioner does not dispute that the 2009 joint return was a valid joint return.

**[*11]** <u>Raymond v. Commissioner</u>, 119 T.C. 191, 194-197 (2002); <u>Acquaviva v.</u>

<u>Commissioner</u>, T.C. Memo. 1996-542, slip op. at 13.

Whether an income tax return is a joint return or a separate return of the

other spouse is a question of fact. <u>Hunter v. Commissioner</u>, T.C. Memo. 2016-

164, at *7 (and cases cited thereat). The determinative factor in deciding whether

a filed return qualifies as a joint return is whether the spouses intended to file a

joint return. <u>Id.</u> The absence of one spouse's signature on a joint return does not

necessarily preclude a finding of a valid joint return where the facts indicate

otherwise. <u>Okorogu v. Commissioner</u>, T.C. Memo. 2017-53, at *19 (citing

<u>Hennen v. Commissioner</u>, 35 T.C. 747, 748 (1961)); <u>Acquaviva v. Commissioner</u>,

slip op. at 13 (and cases cited thereat).

In <u>Okorogu v. Commissioner</u>, at *19, we stated:

> The "tacit consent rule" holds that the intent to file a joint
> return may be inferred from facts demonstrating that a nonsigning
> spouse tacitly approved or acquiesced in the other spouse's filing of
> the joint return. This Court has considered a variety of factors in
> evaluating the issue of tacit consent, especially whether the
> nonsigning spouse filed a separate return, whether the nonsigning
> spouse objected to the other spouse's joint filing, and whether the
> couple's prior filing history indicates the intent to file jointly. Thus, a
> history of reliance by the nonsigning spouse on the other spouse with
> respect to family financial matters, including the preparation of tax
> returns, suggests that the nonsigning spouse consented to the other
> spouse's filing of the return in question. Furthermore, the inclusion
> of income and deductions attributable to the nonsigning spouse on the

[*12] return generally will be taken as proof of the intent to file a joint return, even where the nonsigning spouse failed to give his or her express consent to the filing. [Citations omitted.]

The tacit consent rule is not separable from the presumption of correctness that attaches to the Commissioner's determination of a joint return in cases where one spouse fails to sign. Hennen v. Commissioner, 35 T.C. at 749.

On the record before us, we find that petitioner tacitly consented to the filing of the 2010 joint return. Petitioner did not file a separate Federal income tax return for 2010 despite her income's having exceeded the filing threshold.[5] Petitioner also acknowledged that she provided Mr. Pike her tax-related information for 2010 (as well as for 2009) despite having separated from him in 2008. Mr. Pike credibly testified that petitioner gave him her tax-related information for the years at issue so that the 2009 and 2010 joint returns could be prepared. Furthermore, petitioner and Mr. Pike filed joint Federal income tax returns during all the years they were married, and petitioner relied on Mr. Pike to prepare (or have prepared) those returns, as well as to handle all other family financial matters.

---

[5]Sec. 6012(a)(1) requires every individual whose gross income equals or exceeds the exemption amount to file a return. For 2010 the exemption amount was $3,650. During 2010 petitioner received wages totaling $15,246 from her 2010 W-2 employers. Petitioner's gross income exceeded the $3,650 exemption amount, and therefore she was required to file a return for 2010.

**[*13]** Similarly, petitioner testified that she allowed Mr. Johnson to sign her name on the 2012 joint return. Petitioner acknowledged that (as with the 2010 joint return with Mr. Pike) she had no involvement in the preparation of the 2012 joint return and did not review that return whatsoever before allowing Mr. Johnson to sign her name thereon. The absence of her signature on Federal income tax returns is, therefore, not decisive. Accordingly, these facts support a finding that petitioner and Mr. Pike made a valid joint Federal income tax return for 2010.

III.    Relief Under Section 6015(f)

Where relief is not available under section 6015(b) or (c), such as in this case, section 6015(f) grants the Commissioner the discretion to relieve a requesting spouse of joint liability if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency or any portion thereof. Additionally, section 6015(f) authorizes granting such equitable relief "[u]nder procedures prescribed by the Secretary". For requests filed on or after September 16, 2013, and for requests pending in any Federal court on or after September 16, 2013, Rev. Proc. 2013-34, 2013-43 I.R.B. 397, prescribes the guidelines that the IRS will consider in determining whether equitable relief is appropriate. Although we are not bound by them, since they are applicable in this case we will analyze petitioner's request

**[*14]** under these guidelines to ascertain whether she satisfies the requirements for relief under section 6015(f).  See Yancey v. Commissioner, T.C. Memo. 2017-59, at *17 (and cases cited threat).

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, sets forth seven so-called threshold conditions (threshold conditions) that must be satisfied in order for the requesting spouse to be eligible for equitable relief under section 6015(f). The threshold conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent tax return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.01.  These conditions are stated in the conjunctive; thus, a requesting spouse must satisfy all seven of them before relief may be granted.  Hunter v. Commissioner, at *13 (citing Agudelo v. Commissioner, T.C. Memo. 2015-124, at *18).

[*15] Petitioner meets the first six threshold conditions but does not fully satisfy the seventh condition. Generally, the income tax liability from which the requesting spouse seeks relief must be attributable, either in full or in part, to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income unless a specified exception applies.[6] Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399. If the liability is partially attributable to the requesting spouse, then relief can be considered only for the portion of the liability attributable to the nonrequesting spouse. Id. The liabilities for the years at issue were partially attributable to petitioner. Consequently, she is eligible for relief under section 6015(f) only for the portions of the liabilities attributable to Mr. Pike.

For the portions of the liabilities for which petitioner is eligible for relief under section 6015(f), Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth circumstances under which the IRS will make a streamlined determination

---

[6]The exceptions are: (1) attribution due solely to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. 397, 399. Except for the abuse exception, petitioner does not make any specific allegations that she meets any of the exceptions. On the basis of the record before us (and as further discussed infra pp. 23-24 with respect to addressing abuse as a factor altering any of the factors set forth in Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400), we find that none of the exceptions apply here in any event.

[*16] granting equitable relief to the requesting spouse under section 6015(f). The requesting spouse is eligible for a streamlined determination by the IRS granting equitable relief under Rev. Proc. 2013-34, sec. 4.02, only in cases in which the requesting spouse establishes that she (1) is no longer married to the nonrequesting spouse (marital status requirement), (2) would suffer economic hardship if not granted relief (economic hardship requirement), and (3) did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return (or did not know or have reason to know that there was an understatement or deficiency on the joint income tax return) (knowledge requirement). It is undisputed in this case that the marital status requirement has been met. However, petitioner does not dispute that she would not suffer economic hardship if not granted relief; therefore, the economic hardship requirement has not been met, making her ineligible for a streamlined determination.[7]

---

[7]In the light of petitioner's conceding the economic hardship requirement, we need not address whether the knowledge requirement has been met. See Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. However, in considering below the factors set forth in Rev. Proc. 2013-34, sec. 4.03(2), we address whether petitioner knew or had reason to know that Mr. Pike would not or could not pay the liabilities for the years at issue.

[*17] Where, as here, the requesting spouse fails to satisfy all of the requirements for a streamlined determination, Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400, sets forth seven nonexclusive factors to be considered in determining whether a requesting spouse is entitled to equitable relief under section 6015(f): (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability; (4) legal obligation; (5) significant benefit; (6) compliance with the income tax laws; and (7) mental or physical health of the requesting spouse. These factors are to be weighted appropriately, and no one factor is determinative. See Yancey v. Commissioner, at *19 (and cases cited threat). Accordingly, we will consider each in turn.

With respect to the marital status factor, the parties agree that when the IRS made the determination set forth in the notice of determination, petitioner was no longer married to Mr. Pike. The marital status factor weighs in favor of relief. See Rev. Proc. 2013-34, sec. 4.03(2)(a).

With respect to the economic hardship factor, petitioner does not dispute that she would not suffer economic hardship if relief were not granted. See supra p. 16. The economic hardship factor is neutral. See Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401.

**[*18]** With respect to the knowledge factor, in the case of a tax liability that was properly reported but not paid, we look at whether, as of the date the return was filed (or the date the requesting spouse reasonably believed the return was filed), the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return.  Id. sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401.  This factor will weigh against relief if, on the basis of the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return.  Id.

By April 1, 2011, when she and Mr. Pike completed and signed under penalties of perjury income and expense declarations, petitioner was aware that their last joint Federal income tax return filing was for 2008 and thus that the 2009 joint return was late and the 2010 joint return was imminently due.  She also knew that they needed to use $30,000 of the net proceeds from the sale of their marital home to satisfy their 2008 tax liability.  Indeed, she acknowledged at trial that when she and Mr. Pike separated money was tight.  "[W]e have consistently found that a requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that his or her ex-spouse will pay the

[*19] tax liability." Stolkin v. Commissioner, T.C. Memo. 2008-211, slip op. at 8 (citing Gonce v. Commissioner, T.C. Memo. 2007-328, and Butner v. Commissioner, T.C. Memo. 2007-136).

Furthermore, with respect to the 2009 joint return, petitioner conceded that she signed this return; her signature appears approximately 1-1/2 inches below the line for "amount you owe", which she and Mr. Pike reported was $39,848. Petitioner's testimony that she is "not a numbers person" and therefore completely entrusted Mr. Pike with all of their family financial matters is disingenuous. We have consistently found that a requesting spouse cannot "play the 'ostrich, hiding [his or] her head in the proverbial sand'" or turn a blind eye to the couple's tax filings. See Wang v. Commissioner, T.C. Memo. 2014-206, at *24 (quoting Doyle v. Commissioner, 94 F. App'x 949, 952 (3d Cir. 2004), aff'g T.C. Memo. 2003-96). Given the circumstances, petitioner should have been concerned about her tax obligations and taken some steps to assure herself (i.e., inquire of Mr. Pike) that the tax liabilities for the years at issue would be paid. Thus, we find that petitioner knew or had reason to know that Mr. Pike would not or could not pay

[*20] the tax liabilities for the years at issue.  The knowledge factor weighs

against relief.[8]  See Rev. Proc. 2013-34, sec. 4.03(2)(c).

With respect to the legal obligation factor, we look at whether the

requesting spouse or the nonrequesting spouse has a legal obligation arising from

a divorce decree or other legally binding agreement to pay the outstanding Federal

income tax liability.  Id. sec. 4.03(2)(d), 2013-43 I.R.B. at 402.  This factor will be

neutral if, on the basis of an agreement or consent order, both spouses have a legal

obligation to pay the outstanding income tax liability, the spouses are not

separated or divorced, or the divorce decree or agreement is silent as to any

obligation to pay the outstanding income tax liability.  Id.

Petitioner and Mr. Pike executed an MSA in February 2011, approximately

a month before she petitioned for dissolution of her marriage to Mr. Pike.  The

MSA does not explicitly address the tax liabilities for the years at issue.  It does

provide in the section therein titled "Tax Refunds or Deficiencies" that "[a]ny

deficiency assessed for any prior year in which the parties filed joint returns shall

be payable in proportion to their income in the year assessed by each party as an

individual obligation."  This provision plainly speaks to tax deficiencies and

---

[8]Assuming arguendo that we had found that the knowledge factor favored relief, that finding would not change our ultimate finding set forth below as to whether petitioner is entitled to equitable relief under sec. 6015(f).

[*21] Federal income tax returns filed before the MSA was executed. However, neither of these conditions is applicable here since this is not a deficiency case but rather an underpayment case; and when the MSA was executed, the 2009 and 2010 joint returns had not yet been filed. Thus, this text is not particularly enlightening as to each spouse's legal obligation regarding underpayments of tax. We also note that the mediator credibly testified that the "Tax Refunds or Deficiencies" section was "boilerplate" and that he would not have used it had he known that petitioner and Mr. Pike possibly would have tax liabilities arising from not-yet-filed Federal income tax returns.

The MSA provides in an earlier section titled "Division of Debts" that for any joint debts "discovered hereafter which are not provided for in this agreement, each party will pay one-half of such debt." The mediator credibly testified that this section similarly was "boilerplate" and thus did not specifically address future tax debts. However, he also credibly testified that this section was intended to apply to undisclosed liabilities. Given his testimony, it is apparent that the MSA does not provide that an undisclosed liability would be the sole responsibility of Mr. Pike (or the party who incurred the liability), but rather it would be the equal responsibility of petitioner and Mr. Pike. Accordingly, although the mediator's testimony raises questions as to how he would have handled the issue of tax

[*22] liabilities arising from not-yet-filed Federal income tax returns, the MSA either imposes a legal obligation on both petitioner and Mr. Pike for the tax liabilities for the years at issue or is silent as to such obligation. The legal obligation factor is neutral. See Rev. Proc. 2013-34, sec. 4.03(2)(d).

With respect to the significant benefit factor, there is no evidence that petitioner or Mr. Pike realized any significant benefit, as that term is defined by Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at 402, from the unpaid tax liabilities for the years at issue; respondent's argument that this factor weighs against relief (or is neutral) because less money would have been available for support for petitioner had these liabilities been paid in full and on time is meritless. The significant benefit factor favors relief or at worst is neutral. See Wang v. Commissioner, at *40; Rev. Proc. 2013-34, sec. 4.03(2)(e).

With respect to the compliance factor, petitioner's Federal income tax returns for 2011 through 2014 were all filed late and the tax liabilities reflected thereon were also all paid late.[9] The compliance factor weighs against relief. See

---

[9]Additionally, we note that on her Federal income tax return for 2011, petitioner did not report as income the spousal support she received from Mr. Pike during 2011 pursuant to the MSA they entered into in February 2011. See Wang v. Commissioner, T.C. Memo. 2014-206, at *42 (citing Pugsley v. Commissioner, T.C. Memo. 2010-255).

[*23] <u>Yancey v. Commissioner</u>, at *23-*24; <u>Canty v. Commissioner</u>, T.C. Memo. 2016-169, at *19; Rev. Proc. 2013-34, sec. 4.03(2)(f), 2013-43 I.R.B. at 403.

With respect to the health factor, there is no evidence that petitioner was in poor physical or mental health when the 2009 and 2010 joint returns were filed or when she requested relief under section 6015. Indeed, petitioner did not check the box on Form 8857 that would have indicated that she had a mental or physical health problem at either time. The health factor is neutral.[10] <u>See</u> Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403.

Finally, we note that petitioner cites one additional factor that we do not find to be persuasive here. She contends that Mr. Pike "emotionally mistreated" her and this manner of mistreatment constitutes abuse by Mr. Pike, which favors granting relief to her. The 2009 and 2010 joint returns were filed not only approximately 1-1/2 years <u>after</u> the dissolution of petitioner and Mr. Pike's marriage but also <u>after</u> petitioner married Mr. Johnson, while the claimed "abuse" occurred when petitioner and Mr. Pike were living under the same roof. Consequently, there is no nexus between the claimed "abuse" and the kind of

_____

[10]The fact that petitioner may have allegedly experienced some health challenges in late 2012 and during 2014 on account of two pregnancies after her divorce from Mr. Pike does not "moderately favor[]", as petitioner contends, the granting of relief. <u>See</u> <u>Chou v. Commissioner</u>, T.C. Memo. 2007-102, slip op. at 22-23.

**[\*24]** abuse described in Rev. Proc. 2013-34, <u>supra</u>, that would alter any of the factors specified in Rev. Proc. 2013-34, sec. 4.03(2), so as to militate in favor of granting petitioner relief. Tellingly, on her Form 8857 petitioner did not check the box that would have indicated that she was the victim of spousal abuse or domestic violence (or suffering the effects of such abuse) during the years at issue or when the 2009 and 2010 joint returns were filed; only at trial did she first raise her "abuse" claim. See <u>Hardin v. Commissioner</u>, T.C. Memo. 2016-141, at \*25 (denying threshold relief where abuse was not alleged on the Form 8857 but raised as "an afterthought" during the Tax Court proceedings). There is simply no evidence in the record that Mr. Pike mentally (or physically) abused petitioner "in any sense to which the tax law or common experience will accord any recognition." <u>Ogonoski v. Commissioner</u>, T.C. Memo. 2004-52, slip op. at 17-18 (analyzing the factors set forth in a predecessor revenue procedure to Rev. Proc. 2013-34, <u>supra</u>).

Upon the basis of our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that it would be inequitable to hold her liable for the entirety of the underpayments for the years at issue and thus that she is entitled to relief under section 6015(f) with respect to those years.

**[*25]** We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.